421 So.2d 895 (1982)
STATE of Louisiana
v.
Allison J. MONTANA.
No. 81-KA-2755.
Supreme Court of Louisiana.
October 29, 1982.
*896 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Cliff Strider and Louise S. Korns, Asst. Dist. Attys., for plaintiff-appellee.
Clyde D. Merritt, Dwight Doskey, Orleans Indigent Defender, New Orleans, for defendant-appellant.
CALOGERO, Justice.[*]
Defendants Allison J. Montana and Darlene A. Filmore were indicted for possession of heroin with intent to distribute (R.S. *897 40:966). Filmore pleaded guilty to a reduced charge, and Montana was tried alone. After he was found guilty of attempted possession of heroin with intent to distribute, Montana was sentenced to serve twenty years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. From this conviction and sentence, defendant appeals, assigning six errors, three of which are discussed hereafter.[1]
Defendant argues that trial error occurred when the court qualified one of the officers as an expert and allowed the officer to give expert testimony, including his opinion. The defendant also contends that the jury verdict was based on insufficient evidence, and that the trial court erred in denying the motion to suppress.
As we agree that trial error occurred during the testimony of one of the officers, we find the defendant's first assignment meritorious, reverse the conviction and remand the case to the district court for retrial.
The facts are as follow:
On the evening of November 5, 1980, two New Orleans plainclothes narcotics officers received a tip from a confidential informant that Montana and an unidentified black female were attempting to sell two balloons of heroin for $750.00 each at the corner of Orleans and Prieur Streets. The officers rode around the neighborhood in an unmarked police car in search of Montana, whom they knew, and his female companion. The officers spotted the pair walking towards them as they drove down the 700 block of North Prieur Street. As they pulled alongside the couple, Montana quickly shoved some currency (later determined to be $45.00) into the hand of the woman, Darlene Filmore. The police testified that the suspects' demeanor changed to an apparent state of anxiety.
The officers got out of the car, placed the couple against the vehicle and frisked them. The woman had $45.00 in her hand, and what felt to Officer Dabdoub to be two balloons in her right front pocket. Defendant and Filmore were arrested and the officers discovered that each of the two balloons contained fourteen tinfoil packets of heroin. Defendant had in his possession $470.00 in small bills, but no heroin.

OFFICER'S TESTIMONY
The state relied on police testimony about the arrest, about the defendant's heroin addiction and about drug dealers' methods of operation, to establish constructive possession with an intent to distribute. It was at the conclusion of such testimony that trial error occurred which requires that the case be remanded for a new trial.
Over defense objection, Officer Larry Taplin of the New Orleans Police Department Narcotics and Drug Abuse Section was accepted by the court as an expert in the field of illicit use and distribution of heroin. Defense counsel did not question Officer Taplin's qualifications as an expert but objected generally that the field of illicit use and distribution of heroin was not subject to court recognized expertise. Subsequently, the defense urged that Officer Taplin's testimony be limited to the packaging of heroin. After the officer described how heroin was packaged for street distribution,[2] he explained further that balloons are used by dealers to carry a wholesale quantity of heroin (15, 20, 25 papers) because balloons are easily concealed and can be swallowed when discovery threatens. During the prosecutor's examination of Officer Taplin, the defense objected intermittently to questions concerning how much heroin dealers usually carry, why individual *898 would possess large amounts of heroin, and what might be indicated by the possession of quantities of small bills. Officer Taplin testified without defense objection that a heroin seller often has an unknown in the trade, frequently a girl, hold the heroin while he, the dealer, meets buyers on the street.[3]
A threshold question in cases such as these is whether expert testimony itself is appropriate. This Court has allowed police officers to qualify as experts in various related fields in the past.
In State v. Coleman, 406 So.2d 563 (La. 1981), we upheld the qualification of a policeman as an expert in the field of packaging, trafficking and distributing PCP.[4] Earlier we approved of a trial judge's allowing a police officer, trained and experienced in drug identification and investigation particularly in connection with marijuana, to express an opinion concerning the number of cigarettes that could be made from one pound of marijuana. State v. Stewart, 357 So.2d 1111 (La.1978). Likewise in State v. Carter, 347 So.2d 236 (La. 1977), we found that a police officer was properly certified by the court as an expert witness in the procedures and techniques employed in the sale and exchange of controlled dangerous substances. In finding that the officer's testimony came within the dimensions of expert testimony outlined in La.R.S. 15:464,[5] we said supra at 237:
[A]s long as the expert testifies about matters knowledge of which he has obtained through special training or experience, it is not necessary that the subject to be discussed be susceptible of scientific training or knowledge. See State v. Marks, 337 So.2d 1177 (La.1976); State v. Tornabene, 337 So.2d 214 (La.1976); State v. McCray, 327 So.2d 408 (La.1976).

*899 The knowledge of the procedures and techniques commonly used in the sale and exchange of controlled dangerous substances is not generally possessed by the public at large but requires special training or experience to acquire.
Most recently in State v. Wheeler, 416 So.2d 78 (La.1982), a case involving the propriety of police testimony about marijuana transactions, we explored the practical application of the broad statutory principles governing the admissibility of opinion evidence. In weighing whether evidence is fact or opinion and whether it is admissible as expert opinion evidence under La.R.S. 15:463 and La.R.S. 15:464, the majority in Wheeler, supra at 80, suggested that the trial judge consider three variables: (1) the degree of concreteness of description or the difference in nearness or remoteness of inference; (2) the purpose for which the testimony is to be admitted; and (3) the potential for its classification as expert testimony. As a corollary to the third variable, we determined supra that two elements were needed to warrant the use of expert testimony:
(a) the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the understanding of the average layman; and (b) the witness must have sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth.
In this case, Officer Taplin's testimony concerning the modus operandi of illicit users and distributors of heroin comports with the requirements of La.R.S. 15:464 as explained in Wheeler. The procedures and techniques for the illegal use and distribution of heroin are generally unknown to the public at large and may be explained to the jury to aid them in their search for truth by one possessing special training or experience in such matters.[6] Likewise the state established that Officer Taplin had sufficient skill, knowledge or experience in the field about which he testified. He had worked in the Narcotics and Drug Use Section of the New Orleans police Department for eight years and had attended a two week long drug enforcement school sponsored by the Federal Narcotics Division. Additionally he had arrested hundreds of people for heroin possession or distribution, had worked as an undercover narcotics agent for nineteen months and had been qualified as an expert in narcotics in every section of Orleans Criminal District Court. Therefore we find in the case under consideration that expert opinion is admissible under La.R.S. 15:463 and La.R.S. 15:464 as a general proposition and that the Court's qualifying Taplin and permitting him to testify as an expert was not erroneous.
Having determined that expert testimony is appropriate, we now consider the other two Wheeler variables: the degree of concreteness of description and the purpose for which the testimony is to be admitted.
Officer Taplin's testimony concerning the practices of those who use and traffic in heroin consisted of a concrete description of facts which were peculiarly within his professional knowledge. The bulk of his testimony was a recitation of the characteristics of heroin dealers gleaned from his experience. Such a recitation is permissible. It was not improper to allow it.
The jury may couple the knowledge gained from the experience of the officer with the characteristics exhibited by the defendant as established by the state at trial and make an inference as to the ultimate issue of the defendant's guilt. On the other hand, that inference as to the ultimate *900 issue of defendant's guilt is for the jury and the jury alone. When an expert ventures his opinion on that issue, he improperly usurps the function of the jury. This Officer Taplin did at the end of his testimony when he gave his own opinion essentially concerning the guilt of the defendant, Allison Montana. He ventured his opinion given a factual situation similar to what prevailed in this case, that "more than likely the female is the courier for the ... male addict. She's carrying, she's in possession for the person that she's with" and also that "they had it for sale."[7]
In effect, Taplin specifically gave his opinion upon the basic issues in the case whether the narcotics in Filmore's pocket were in the constructive possession of the defendant and whether there was an intent to distribute them. These were ultimate facts for the jury to decide. As stated in Wheeler, supra at 82:
As the subject matter of the opinion approaches the hub of the issue, the risk of prejudice and hence of reversible error consequently increases. This is particularly so when the witness expressing the opinion is one, such as a police officer, in whom jurors and the public repose great confidence and trust. Under these circumstances, it is clear that a substantial right of the defendant has been violated, and that there is a reasonable possibility that the errors contributed to his conviction. Article 921; State v. Gibson, 391 So.2d 421 (La.1980).
Just as in Wheeler's case where the trial court erred by permitting the narcotics officer to testify that it was his opinion that the defendant had been involved in the distribution of marijuana,[8] the trial judge here erred in letting Officer Taplin say in effect that this defendant possessed with intent to distribute.
To this extent, there is merit to the defendant's assignment of error based on Officer Taplin's testimony.

SUFFICIENCY OF THE EVIDENCE
The defendant also argues that the evidence taken as a whole was insufficient *901 to convict him of the crime charged and that the jury erred under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Even though we determine to reverse the ruling of the lower court because of the trial error discussed above, it is incumbent upon us to consider the insufficient evidence assignment of error because, if meritorious, it would prompt a dismissal rather than a reversal and remand for new trial.
Upon a review of the record before us, we find that as relates to proof of constructive possession of heroin with intent to distribute or of the lesser charge of which the jury in fact found defendant guilty, attempted possession of heroin with intent to distribute, there was not such evidentiary insufficiency that a rational fact finder could not have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.
What we have by way of evidence in this case is the following: (1) When the defendant saw the officers on the night of his arrest, he became extremely agitated and anxiously thrust the money he was holding into the hand of his companion Darlene Filmore. (2) An additional $470.00 in small bills was discovered on the defendant. (3) Two balloons of heroin were found in Ms. Filmore's pocket. (4) Montana had recent track marks and scabs on his arm; Ms. Filmore had none. Were that the entirety of the evidence presented, we might be willing to conclude that under the Jackson standard as it relates to circumstantial evidence,[9] there was not sufficient evidence. But, in this case, there was more.
First of all, there was the unobjected to testimony concerning the modus operandi of drug sales wherein another person, commonly a girl, is used to carry drugs so that the dealer may avoid apprehension. Additionally, there was expert testimony concerning Montana's heroin addiction, the usual practice of heroin users' not stockpiling the drug and the fact that two balloons of heroin is more than what is needed for personal use. Furthermore there was presented to the jury the admittedly inadmissible Taplin opinion testimony, discussed hereinabove, that given facts exactly like those presented in this case, his conclusion was that the male addict constructively possessed with an intent to distribute the heroin carried by the female non-addict.
There was such a quantity of evidence as to make out, at least minimally, a sufficient case under Jackson v. Virginia. The state is therefore entitled to retry this defendant.

MOTION TO SUPPRESS
Since this appeal has resulted in a reversal and remand to the district court for retrial, we deem it advisable to consider a defense assignment of error which is likely to arise upon appeal should defendant be convicted on retrial. That assignment is defendant's claim that the trial court erred in denying his motion to suppress. Upon review, we find that the ruling by the trial judge was correct. There was probable cause to arrest, after which the evidence was properly seized.
At the hearing on the motion to suppress it was determined that the arresting officers had received specific detailed information from a confidential informant that "Booby" Allison Montana and a tall slender unknown female who carried two balloons of heroin in her right front jeans pocket were selling the balloons of heroin for $750.00 each at the corner of Prieur and Orleans Streets. This information was revealed *902 in a meeting between the officers and the informant in the vicinity of Orleans and Prieur Streets only fifteen minutes before the arrest of Montana and the girl later identified as Darlene Filmore. The detailed corroborated information which was the result of the informant's personal observation bears sufficient indicia of reliability. Furthermore the confidential informant was known to the arresting officers and had provided information for several years, information which had been reliable and which had led to numerous arrests and convictions of narcotic offenders in the City of New Orleans. The court's ruling denying defendant's motion to suppress was not erroneous.
Accordingly this assignment lacks merit.

Decree
For the foregoing reasons, the conviction is reversed, the sentence is set aside, and the case is remanded to the district court for retrial.
REVERSED AND REMANDED TO THE DISTRICT COURT.
DIXON, C.J., concurs in part and dissents in part.
WATSON, J., concurs and assigns reasons.
BYRNES, J., and DAVID R.M. WILLIAMS, J. ad hoc, dissent.
DIXON, Chief Justice (concurring in part and dissenting in part).
I respectfully concur in the reversal, but believe that there has been insufficient evidence to support finding, in a rational way, that Montana "possessed" the heroin in his female companion's pocket while walking down the street. He should, therefore, be discharged.
WATSON, Justice, concurring.
Although I dissented in State v. Wheeler, 416 So.2d 78 (La., 1982), being of the opinion that the conclusion stated by the witness was harmless error, I now concur in the holding that it is reversible error to allow a police officer to answer the basic question which the jury is to determine.
Therefore, I respectfully concur.
NOTES
[*] Judges Charles R. Ward, William H. Byrnes, III, and David R.M. Williams of the Court of Appeals, Fourth Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Pascal F. Calogero, Jr., James L. Dennis, and Jack Crozier Watson.
[1] Defendant's other assignments of error include the following: (1) The trial court erred in allowing an officer to establish his qualifications as an expert by testifying before the jury that his testimony in the past had obtained convictions; (2) The trial court erred in denying a mistrial when officers informed the jury that a person on the street had identified Montana as possessing heroin; (3) The trial court erred in allowing the prosecutor to argue beyond the record evidence.
[2] Officer Taplin stated that the usual dosage unit was a tinfoil package or bag or paper which generally costs $50.00.
[3] The following exchange took place between the prosecutor and Officer Taplin, without defense objection.

Q. [H]ave you ever experienced heroin dealers working in teams?
A. That's just about the only way that it's done.... There's one person to guard the dope, and a second person to protect it, somebody maybe not as noticeable to the police.... Maybe a young person, more commonly, a female that is not known, and she'll hold the heroin while the guy meets the people on the street.... She could be just across the street or around the corner.... The reasons are obvious. If I'm known as a user of heroin and suspected as a dealer of heroin it's more likely that I'm the one to be stopped rather than you, if you're my girlfriend. I could just pay you or whatever, but you would work as the person that will hold it for me....
Q. You said, it would be less likely for somebody else to have trouble if they're stopped. Stopped by whom?
A. Stopped by the police. Police often receive anonymous tips.... [T]hey have a description of a guy wearing a white T-shirt and blue jeans ... people in the neighborhood... will call about things that are going on, and they won't identify themselves.... I'm sure that they are stopped by a different police officer on a daily basis.
Q. What would be the advantage of having a female working with a man?
A. The female would hold the drug while the male met with the contacts. Sometimes it works just the opposite. The male may not have a record, and the female has a record, then the male would hold it, and ... try to stay "out of the heat", as the term goes on the street.... If you go to Orleans and Prieur that intersection is hot.... Now, the person meeting people will stand out there... police stop him; he don't have anything on him. The second person may be around the corner about two blocks away visiting a friend right in the neighborhood.... It makes for easier, smooth operation, and you don't have to worry about being stopped and having the drugs on your person at that time.
[4] The officer's qualifications in Coleman appear at 406 So.2d 563, 568:

Officer Haab has been a policeman for fourteen years, the last eleven years being spent with the narcotics division. He has participated in the investigation and arrest of persons for possession and distribution of P.C.P. on approximately two hundred fifty occasions. Officer Haab attended the D.E.A. drug school and has qualified as an expert in every section of Criminal District Court in New Orleans, in Baton Rouge, in Jefferson Parish and in federal court. He also worked undercover for three years and carried out several hundred drug purchases from various suspects.
[5] La.R.S. 15:464 provides:

On questions involving a knowledge obtained only by means of special training or experience the opinions of persons having such special knowledge are admissible as expert testimony.
[6] Compare State v. McCray, 327 So.2d 408 (La. 1976) wherein this Court upheld a trial judge's ruling which allowed an experienced Vice Squad officer to testify as an expert concerning the investigation, identification, and modus operandi of panderers. For other sources of authority on the use of expert witnesses to educate the trier of fact as to the modus operandi of pertinent forms of criminality, including narcotics transactions, see generally: Annot., 100 A.L.R.2d 1433.
[7] At the end of Officer Taplin's direct examination, the following testimony occurred to which defense counsel objected, without success:

Q. Officer, one final question. If I were to tell you two individuals were arrested, one male, one female, and the male holding $470.00 in small bills, and the female holding two balloons and each containing seven packages of heroin; the male having thirtythree active track marks, track marks and scabs, and the female having no active track marks, what would be your opinion?
A. [M]ore than likely the female is the courier for the addict, for the male addict. She's carrying, she's in possession for the person that she's with. Naturally, because if she's not a heroin addict, why would she have it?
Q. And what would be the intended use of that drug? Would it be for personal use or for intent to distribute?
* * * * * *
A. Fourteen $50.00 bags is a bit much for a person to shoot at one time.
Q. So what would be your opinion?
A. That they had it for sale. (Emphasis provided.)
[8] In Wheeler, 416 So.2d at 79, the prosecutor posed the following hypothetical to a police officer who was testifying as an expert in narcotics transactions:

Q. [A]ssume that on an afternoon in March, 1981 two New Orleans police officers see an individual at the intersection of Law and Congress Streets. Please assume also at least three times this individual is approached by three black males and at this time the defendant reaches inside a grocery bag by his foot and gives the three black males something. The police approach this individual, he puts the bag in a garbage can nearby and leaves the scene. The police apprehend this individual and upon searching his person find $359.00 in cash and six live rounds of ammunition and please assume also the police inside the bag in the garbage can find ten coin envelopes of marijuana, one plastic bag of marijuana and one Magnum revolver. I am asking you to assume these ten coin envelopes here are the ten coin envelopes in the hypothetical question and also the envelope marked S-3 is the plastic bag in the hypothetical question. In your expert opinion what is the likelihood of this individual being involved in the distribution of marijuana? (Emphasis in original.)
The officer's impermissible response was:
In my opinion the person would be involved in the distribution of marijuana, he might have a dime bag, but not several dime bags and he would not have $359.00. (Emphasis in original.)
[9] In State v. Austin, 399 So.2d 158 at 160 (La. 1981), we considered the Jackson standard of review when the state's case is founded upon circumstantial evidence and said in that regard:

Regarding circumstantial evidence, R.S. 15:438 sets forth the rule that, in order to convict, the evidence must exclude every reasonable hypothesis of innocence. Under Jackson, the evidence is viewed in the light most favorable to the prosecution and from the viewpoint of a rational trier of fact. Therefore, when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.