445 So.2d 463 (1984)
STATE of Louisiana
v.
Henry BARBER.
No. KA-1020.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
Writ Denied March 16, 1984.
*465 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Harry E. Cantrell, Jr., New Orleans, for defendant-appellant.
Before SCHOTT, BARRY and WARD, JJ.
BARRY, Judge.
Defendant Henry Barber was convicted of four counts of possession with intent to distribute controlled dangerous substances under LSA-R.S. 40:967 and 40:969 and sentenced to 2½ years at hard labor on each count, to be served consecutively.[1] Defendant assigns three errors: the denial of a motion to suppress; the expert testimony of a narcotics officer; and the denial of a new trial based on insufficiency of the evidence.
On August 10, 1982 two narcotics officers received information from a confidential informant that the defendant, who lived in Apt. # 1 at 1527 Euterpe Street, sold Dilaudid to him at his apartment. The defendant also showed the informant Preludin and invited him back to buy more drugs.
That evening the officers set up a surveillance at 1527 Euterpe Street and during a four-hour period observed three separate incidents in which a person entered the premises, remained there 5-10 minutes, and left. The first subject looked over her shoulder before entering the apartment and walked away hurriedly. The next person paced nervously and kept peering out of the hallway before being admitted. While inside this man was observed pulling aside the curtains and peering out the front window before exiting. The third incident involved two men: one waited outside while the other entered. After a few minutes the man who had gone inside reappeared and displayed to the other man a small object in his right hand which he then pocketed and both left.
The warrant application affidavit recounted the above facts and said the informant's tip was received on August 10, 1982 (the date of the warrant application), but the affidavit did not specify the date of the informant's drug purchase from defendant. The warrant was issued and the officers found Sylvia Wilson and Gwendolyn Parker in the apartment's bathroom and a baby in one bedroom. Seized from one room, which was sealed off from the rest of the house by a locked door, were nineteen hydromorphone (Dilaudid) tablets, nineteen phenmetrazine (Preludin) tablets, six diazepam (Valium) tablets, about eighty pentazocine (Talwin) tablets, and about ninety Pyribenzamine tablets. The drugs were behind an aquarium with a live baby alligator in it. From the bedroom the police seized a bottle of methadone, and from the bedroom closet they seized hypodermic syringes and needles, four pill bottles, packages of test tubes, prescriptions for methadone in Gwendolyn Parker's name, prescriptions for Talwin and Preludin in the defendant's name, and a blank prescription pad. They also seized letters addressed to the defendant at the Euterpe Street address and a photo album with pictures of the defendant.
*466 The defendant was not present at the time of the search. The two women were arrested[2] and, after a warrant for Henry Barber's arrest was issued, Barber turned himself in to the authorities.
Sylvia Wilson testified that the defendant lived at 1527 Euterpe Street at the time of the search and she said she was there that evening to babysit for him. She was to receive five sets of T's and blues (Talwin and Pyribenzamine) as payment for her babysitting services, two of which she received when she arrived. She stated the defendant got the sets from the room where the aquarium was and the defendant had other drugs in that room.
Ms. Wilson admitted she had prior convictions for theft and prostitution. She had recently had a baby which was conceived during her stay with the defendant, and she thought the baby might be his child.
Officer Michael Cimino, a five-year veteran of the N.O.P.D. narcotics squad who had participated in numerous wholesale and retail drug transactions during 18 months as an undercover agent, testified concerning the use, abuse, appearance, packaging, popularity, price and method of distribution and sale of illegal drugs in the New Orleans area. He did not give an opinion as to whether the defendant was dealing in drugs, but testified as to the price and quantities of the various Schedule II and IV drugs at the retail level.

ASSIGNMENT OF ERROR NO. 1
The defendant argues the trial court erred in denying his motion to suppress because the warrant was not based on probable cause. Specifically, defendant contends the supporting affidavit failed to specify the date when the informant purchased the drugs from defendant and such information was stale and therefore invalid.
In evaluating whether an affidavit based upon statements by a confidential informant has established probable cause, the magistrate is directed to apply a "totality of the circumstances" analysis as recently enunciated in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
The Gates standard was applied by the Louisiana Supreme Court in State v. Rodrigue, 437 So.2d 830 (La.1983), which declared:
The process of determining probable cause for the issuance of search and arrest warrants does not involve certainties or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and as based on the totality of circumstances. See Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317 [76 L.Ed.2d 527] (1983). The process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system. Jaben v. United States, 381 U.S. 214 [85 S.Ct. 1365, 14 L.Ed.2d 345] (1965).
In this case the search warrant affidavit recites that on the day of the warrant application, the officers spoke with a reliable confidential informant whose past information had led to convictions. The officers ran the defendant's name through the police computer and found he had been arrested for narcotics violations in November, 1980 and October, 1978 and had listed his address as 1527 Euterpe Street, Apt. # 1. The affidavit described the surveillance and the activity involving the three brief visits to the address.
The affidavit set forth the reasons why the informant concluded that the drugs would be at defendant's apartment: the informant had purchased Dilaudid there and was invited to return for more drugs. The affidavit also delineates that the informant was considered reliable because prior *467 tips had led to drug convictions. Further, the affidavit set forth corroborating evidence of traffic in and out of defendant's apartment, consistent with the informant's information.
The Louisiana Supreme Court has held that the validity of a search warrant may be affected by the passage of time. The facts and circumstances of each case determine whether the affidavit established probable cause on the date of the execution of the warrant. In State v. Bruno, 427 So.2d 1174, 1177 (La.1983) the Court echoed the rule set forth in Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), and said:
[t]he proof [of probable cause] must be of facts so closely related to the time of issue of the warrant as to justify a finding of probable cause at that time.
It has been held that the absence of the date of an event listed in the affidavit will not render it invalid. Such an affidavit is still valid if, "in a commonsense construction it can be said from the face of the affidavit that the information received by the affiant was current and not stale." State v. Turner, 337 So.2d 1090, 1095 (La. 1976); State v. Boudreaux, 304 So.2d 343 (La.1974).
In State v. Tate, 407 So.2d 1133, 1137 (La.1981), the Court upheld a warrant issued 2½ months after the affiant's initial observation but corroborated by a more recent informant's tip. The Court declared: "Staleness is an issue only where the passage of time makes it doubtful that the object sought in the warrant will be at the place where it was observed."
In the instant case, the informant spoke to the officers on the same day that the affidavit was prepared. Even though the affidavit does not specify when the informant purchased the drugs, it does detail that the informant observed a "quantity" of Dilaudid and Preludin and was invited by the defendant to purchase more drugs whenever he wanted. In addition, the officers observed activity at the defendant's apartment consistent with the sale of drugs. Importantly, the informant proved reliable. Using a "commonsense" interpretation of these facts, we find the magistrate could have reasonably found probable cause to believe that the drugs would still be in the defendant's apartment.
State v. Rodrigue, supra, specifies the standard for appellate review:
Furthermore, this case involves the review of a magistrate's determination of probable cause prior to issuing the warrant. Such a determination is entitled to significant deference by reviewing courts. Spinelli v. United States, 393 U.S. 410 [89 S.Ct. 584, 21 L.Ed.2d 637] (1969). As the Supreme Court stated in Gates, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." ___ U.S. at ___, 103 S.Ct. at 2331. Additionally, because of "the preference to be accorded to warrants", marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable. United States v. Ventresca, 380 U.S. [102], 109 [85 S.Ct. 741, 746, 13 L.Ed.2d 684] (1965).
The trial court's finding of probable cause and its refusal to suppress the evidence were not an abuse of its discretion and this assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the lower court erred by qualifying Officer Cimino as an expert in the field of illegal drug packaging and distribution. Defendant claims the "main point" of Officer Cimino's testimony was to show defendant's intent to distribute the drugs.
Officer Cimino had been working for the Narcotics & Drug Abuse Section of the New Orleans Police Department for five years. He attended an intensive two week drug enforcement school conducted by the Federal Narcotics Division and worked as an undercover agent for 18 months, during which he made over 100 drug purchases. As an undercover agent, Cimino observed the packaging and selling of wholesale and *468 retail illegal drugs (including each of the substances found at defendant's apartment) on a daily basis. Officer Cimino had previously qualified as an expert in illegal drug packaging and distribution in other sections of criminal court.
The trial court qualified Officer Cimino as an expert under LSA-R.S. 15:464 which provides:
On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony.
Our Supreme Court has held that the "[c]ompetency of expert witnesses is a question of fact within the sound discretion of the trial judge, and his rulings on qualifications of experts will not be disturbed unless clearly wrong." State v. Coleman, 406 So.2d 563, 568 (La.1981). See also State v. Michel, 422 So.2d 1115, 1119-20 (La.1982). In State v. Montana, 421 So.2d 895 (La.1982), the Court upheld the expert qualification of a police officer who had eight years experience in the N.O.P.D. narcotics section, worked undercover for 19 months and attended the same federal drug enforcement school as Officer Cimino.
There is no doubt Officer Cimino had special knowledge obtained as a result of his training and experience that would not be within the knowledge of the general public. We find no error in his qualification as an expert.
Defendant further argues that, while Cimino testified as to how certain drugs are usually packaged and used, "The main point of the officer's testimony, however, was to conclude that the defendant did indeed possess these drugs with intent to distribute." Defendant cites the holding in State v. Montana, supra, contending "Officer Cimino usurped the function of the jury when he gave his own opinion essentially concerning the guilt of defendant." That contention is not supported by the record. Unlike the drug expert in Montana, Officer Cimino testified only as to the methods of use, popularity, appearance, distribution and price of certain drugs. He did not give his opinion as to what constituted constructive possession or intent to distribute drugs. In fact, his testimony was general in nature and not tied to the defendant's fact situation or to a similar situation.
Comparable testimony was allowed in State v. Montana, supra, which held:
Officer Taplin's testimony concerning the practices of those who use and traffic in heroin consisted of a concrete description of facts which were peculiarly within his professional knowledge. The bulk of his testimony was a recitation of the characteristics of heroin dealers gleaned from his experience. Such a recitation is permissible. It was not improper to allow it.
Unlike Officer Cimino, the expert in State v. Montana went beyond general testimony and, in response to a hypothetical fact situation identical to the one at trial, gave his opinion that the defendant was in constructive possession of the drugs and intended to distribute the drugs. The Court held that those were ultimate facts for the jury to decide, and such testimony usurped the jury's role.
Officer Cimino did not testify as to any such "ultimate facts" and his testimony was well within the scope afforded an expert witness.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in denying his motion for a new trial because the evidence was insufficient to prove either his possession or intent to distribute the drugs. Defendant argues the evidence on those elements was purely circumstantial and the State was therefore required to "exclude every reasonable hypothesis of innocence" as mandated in circumstantial evidence cases. State v. Shapiro, 431 So.2d 372 (La.1982). Defendant, however, overlooks the direct testimony of Ms. Wilson, the babysitter, as to his possession and distribution of the drugs.
*469 The standard of review in this case is the general standard expressed in Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) and State v. Fuller, 414 So.2d 306, 307 (La.1982): A reviewing court must determine whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
The defendant was convicted of possession with intent to distribute Preludin, Dilaudid, Talwin, and Valium. The State was required to show not only that those drugs were within his possession, but also that he possessed the drugs with the intent to distribute. The defendant was not present when the apartment was searched and cannot be deemed to have been in actual possession of the drugs, so proof of constructive possession is required.
In a similar case, State v. Williams, 250 La. 64, 193 So.2d 787 (1967), police officers received information that the defendant was selling heroin from his apartment. As a result of surveillance, the officers observed a known drug addict approach the defendant's house and converse with him. The defendant went into his apartment, then returned and handed something to the man. The officers obtained a search warrant. The defendant was not present when the warrant was served, but other people in the apartment were arrested. The defendant was later arrested when he returned to his apartment. The Court found the defendant to be in constructive possession of the heroin found in the house, even though others were present in his apartment at the time of the drugs' seizure.
In the instant case, the drugs and paraphernalia were found where the defendant lived. His residency was established by Ms. Wilson's testimony and the letters seized at the apartment which were sent to him at that address. There was no evidence that anyone else lived at that address. The Dilaudid, Preludin, Valium, and Talwin tablets were all seized from a room that was closed off from the rest of the apartment by a locked door, to which neither person present at the time of the search had access. Prescriptions in Henry Barber's name for Dilaudid, Preludin and Valium, as well as blank prescription pads, syringes and test tubes were found in the bedroom closet. Additionally, Ms. Wilson testified that she had seen the defendant with the drugs earlier in the evening. Therefore, there was ample evidence for the jury to find defendant was in constructive possession of the drugs.
Ms. Wilson testified that for babysitting services the defendant had given her two sets of the drugs earlier that evening and was going to give her three sets when he returned. According to Officer Cimino the average street price of the drugs found in the locked room was between $1,857 and $2,560. Ms. Wilson said the defendant was not employed at the time of the seizure, nor was he employed the year before when she lived with him.
The intent to distribute may be inferred from the circumstances of the case. State v. Trahan, 425 So.2d 1222 (La.1983) and State v. Greenway, 422 So.2d 1146 (La.1982). An intent to distribute may be inferred when the quantity of the drugs is so large that no other inference is reasonable. State v. Trahan, supra. Considering the value of the drugs, the testimony that defendant did not work, and the statement by Ms. Wilson that she was "paid" with drugs from the stock which the police seized, we feel the jury could have found beyond a reasonable doubt that the defendant intended to distribute the drugs.

ERRORS PATENT REVIEW
The record shows the defendant was convicted of possession with intent to distribute hydromorphone (Dilaudid), a Schedule II narcotic which mandates not less than five (5) years at hard labor. R.S. 40:967 B(1). The district court erred by imposing a 2½ year sentence, a technical error which could be corrected by this Court or on remand. State v. Telsee, Jr., 425 So.2d 1251 (La.1983). However, a recent Supreme Court per curiam apparently *470 overrules our authority to impose the statutorily mandated sentence because to do so would have a "chilling effect" on appeals by defendants. State v. Napoli, 437 So.2d 868 (La.1983). We disagree but defer to our high court.
Defendant's assignments of error are without merit. His conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant was found not guilty on one count of possession with intent to distribute.
[2] Ms. Wilson was charged with possession with intent to distribute, but the State agreed to dismiss the charges due to her agreement to testify. Ms. Parker pleaded guilty as charged to possession with intent to distribute.