1 Judge PATRICIA RIVET MURRAY.
The defendant, Bruce Morgan, appeals his conviction for possession with intent to distribute heroin and his life sentence. Mr. Morgan asserts that the trial court erred in three respects: (i) denying his motion to suppress the evidence, (ii) allowing into evidence the state’s expert witness’ testimony on the ultimate issue of guilt, and (iii) infringing on his constitutional right to testify in his own defense. Finding no error, we affirm the conviction and sentence.

STATEMENT OF THE CASE

On September 21, 2000, Mr. Morgan was charged by bill of information with possession with intent to distribute heroin in violation of La. R.S. 40:966. On September 29, 2000, he was arraigned and pleaded not guilty. On December 19, 2000, a hearing was held on Mr. Morgan’s motions to suppress the evidence and a statement. On February 5, 2001, after allowing the parties to submit memoranda on the issue, the trial court denied those motions; on March 13, 2001, the trial court issued written reasons for denying those motions. On October 22nd through 24th, 2001, Mr. Morgan was tried before a twelve-person jury. Following the trial, the jury found him guilty as charged. On April 11, 2002, *1128 the trial court denied Mr. ^Morgan's motion for new trial. On May 10, 2002, the trial court sentenced him to life in prison, without benefit of probation, parole or suspension of sentence. The trial court on that same date also denied Mr. Morgan’s motion to reconsider sentence. The trial court granted Mr. Morgan’s motion for appeal.

STATEMENT OF THE FACTS

At the hearing on Mr. Morgan’s motion to suppress, it was established that New Orleans Police Department (NOPD) Officers Demetrius Jackson and Wayne Jacques were informed by a rehable confidential informant that Mr. Morgan was conducting around the clock sales of illegal narcotic drugs from his residence at 1414 Delery Street in New Orleans. On July 31, 2000, the officers initiated a controlled buy from that location using the informant.[1] On August 1, 2000, the officers applied for and obtained a search warrant for Mr. Morgan’s residence.
At trial, Officer Jackson testified that they delayed executing the warrant until August 7th because they were involved in other investigations and because they wanted to make sure Mr. Morgan was home when the warrant was executed. When they went to execute the warrant on August 7th, Officer Jackson testified that they conducted a brief surveillance from an area near Mr. Morgan’s residence. He testified that he spotted Mr. Morgan four blocks from his residence, around the 1100 block of Delery Street, standing next to a gray Buick LeSabre. He then saw a red truck pull up next to the LeSabre and a man exit the truck. Mr. Morgan and the truck driver then engaged in a brief conversation. The truck driver then reached 13into his pocket, pulled out an unknown amount of money, and handed it to Mr. Morgan. Mr. Morgan then entered the LeSabre, popped the gas cap compartment door, exited the vehicle, walked to the gas cap compartment, pulled out a white package containing a plastic bag, and handed it to the truck driver. The truck driver then got back into the red truck and departed.
Based on his experience as a major narcotics detective, Officer Jackson testified that he believed he had just witnessed a “hand-to-hand” drug transaction. At that point, he called for back-up assistance to stop Mr. Morgan, who appeared to be leaving the area; he had started driving from the 1100 block of Delery Street towards the 1500 block.
Officers Clarence Gillard testified that he and his partner, Officer Kevin Honoré, were the back-up team. He further testified that Officer Jackson notified them by radio of what he had observed and requested they conduct an investigatory stop of Mr. Morgan. He still further testified that they stopped Mr. Morgan, who was driving a gray Buick LeSabre, in the 1500 block of Delery Street, and advised him he was under investigation for narcotics violations. The officers seized the temporary tag for the vehicle, which identified it as a 1991 Buick LeSabre. Mr. Morgan was searched and detained in a police unit. In Mr. Morgan’s pocket, the officers found eighty dollars.
*1129 Officer Jacques, similar to Officer Jackson, testified regarding his involvement in obtaining and executing the search warrant. Officer Jacques further testified that his job in the pre-raid- surveillance on August 7th was to ascertain if Mr. Morgan was present at his residence and to see if he was committing any violations. After the back-up team detained Mr. Morgan, Officer Jacques testified that he entered the LeSabre, popped opened the gas cap Lcompartment, and found in that compartment a white packet marked “Top Gun” (a male potency product) containing seven individual foils. Each foil contained a white powdery substance, which subsequently tested positive for heroin. Both Officers Jackson and Gillard testified that they witnessed Officer Jacques remove the Top Gun package from the gas cap compartment.
Thereafter, the officers relocated to 1414 Delery Street to execute the search warrant. Using the keys they obtained from Mr. Morgan to unlock the door, five officers (Officers Jackson, Jacques, Gillard, Honoré, and Cager) searched the residence. As a result of that search, the officers seized the following items: one bottle of Inositol (a dietary supplement); one Tanita digital scale; two Top Gun packets (identical to the one found inside the gas cap compartment); documentation in Mr. Morgan’s name (Sewerage and Water Board and Times-Picayune bills for the relevant period); and one Nokia cell phone. The officers also found slightly over ten thousand dollars in cash (mostly five and ten dollar bills). The money was found in two places: Officer Gillard found $1,995 in a dresser drawer inside the master bedroom, and Officer Honoré found $7,880 stashed inside a vacuum cleaner bag. The money was seized by NOPD’s Asset Forfeiture.
The officers found no evidence to indicate Mr. Morgan was a drug user; particularly, they found no syringes, burned foil, or burned spoons, and they saw no track marks on Mr. Morgan. Nor did the officers find any heroin in the residence. After the officers completed the search of the residence, they searched the LeSabre, which Officer Honoré had moved to 1414 Delery Street, but found nothing inside it.
Sergeant Michael Glasser, who had twenty years experience in narcotics enforcement, was stipulated to be an expert in the packaging of narcotics, | ¡^specifically heroin. Based on his experience, he testified that heroin is generally sold and distributed on a retail level packaged in tin foil. He further testified that heroin peddlers generally conceal their drugs in clever hiding places and that the gas cap compartment of a vehicle is “a fairly common place” they conceal it. He estimated the street value of the tin foils at issue in this case to be around $20 to $25 a piece. He also stated that it is a common practice for narcotics dealers to use vehicles belonging someone else, like a relative.
Sgt. Glasser stated that because heroin is lethal in its pure form it is necessary to cut it with some other substance. He explained that Inositol is commonly used as an adulterant for both cocaine and heroin because it homogenizes well with the narcotics and is not harmful when ingested. Sgt. Glasser also explained that because a dosage unit of heroin is a very small quantity (typically fifty milligrams) of which only twenty percent is heroin, a distributor would need a digital scale to measure such very small amounts. He further testified that collectively a digital scale, Inositol, and heroin in the Top Gun packets are suggestive of a distribution effort.
Sgt. Glasser further testified that a large amount of cash is also indicative of a *1130 distribution effort. He still further testified that the condition of the money— crumpled up bills as opposed to fresh new ones — was indicative of street sales because buyers generally crumple up their bills. Also the small denomination of many of the bills was consistent with retail drug sales. He further testified on redirect that in his expert opinion a large amount of money absolutely would be of some evidentiary value in a possession with intent to distribute heroin case.
| fiOfficer Harry O’Neil, who was qualified as an expert in the identification of narcotics, testified that the white powder in the tin foil packets tested positive for heroin.
The defense called several lay witnesses, including neighbors and relatives. Contrary to the police officers’ testimony, the defense witnesses testified that at the time of the arrest Mr. Morgan was sitting with friends and relatives on the porch of his mother’s residence, which is located at 1522 Delery Street. The defense witnesses stated that shortly after Mr. Morgan stepped off the porch, the police arrested him. The gray vehicle, according to the defense witnesses, was a Park Avenue that belonged to Mr. Morgan’s brother, Lionel Sims, who had been sentenced to prison three days before Mr. Morgan’s arrest.[2]
Mr. Morgan’s wife, Lynn Williams, testified she returned home because she was informed the police were searching the residence. She testified that the money seized from the residence belonged to her and identified the source of the money as her earnings from working several jobs and her settlements of various lawsuits. She testified that the reason she put her money in a vacuum cleaner bag, as opposed to the bank, was because she had student loans and was told the money would be seized if she put it in the bank. She testified that she retained an attorney to assist her in the civil forfeiture proceeding regarding the money.[3] She also testified that she has been using a dietary supplement for about two years and that she uses a scale to weigh it.

\ .ERRORS PATENT

A review of the record reveals what would appear to be, and what Mr. Morgan asserts to be, an error patent. Mr. Morgan’s sentence contains a prohibition against parole, but the applicable sentencing provision, La. R.S. 40:966(B), prohibits only probation and suspension of sentence. As Mr. Morgan points out, La. R.S. 40:966(B) does not prohibit parole if a defendant serving a life sentence for this offense has his sentence commuted to a terms of years. Following this court’s long-standing practice of amending a sentence that improperly denies parole eligibility, we amend his sentence to remove the prohibition of parole.[4]

*1131
ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Mr. Morgan contends that the trial court erred in denying his motion to suppress the evidence found in the gas cap compartment of the vehicle he was driving. As noted above, when the police went to execute the search warrant, they observed Mr. Morgan engage in a hand-to-hand drug deal with an unidentified individual who departed in a red truck. They also observed Mr. Morgan obtain the object he exchanged for currency from the gas cap compartment of his vehicle. They then effectively searched the vehicle to retrieve the heroin from the gas cap compartment. Given the state only obtained a | ¿warrant for his residence, it is undisputed that this search of the vehicle was done without obtaining a warrant.
The jurisprudence is settled that if the police had probable cause to believe there was contraband in the car, they could validly search it without obtaining a warrant. Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). The determining factor is whether the police had probable cause to believe there was contraband in the gas cap compartment. Probable cause to search exists when the facts and circumstances are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Huffman, 419 So.2d 458 (La.1982). The issue is thus whether it was more probable than not that there was contraband in the gas cap compartment.
Mr. Morgan argues that the police were uncertain what was being taken in and out of the gas cap compartment and thus he argues they lacked probable cause to search the car and that the evidence should have been excluded. In support of this contention, he relies strongly on a case involving similar circumstances that this court recently decided; indeed, he describes it as “on all fours with this case.” State v. Corzo, 2001-1278 (La.App. 4 Cir. 2/13/02), 811 So.2d 73, rev’d, 2002-0766 (La.11/8/02), 831 So.2d 904.
Factually, Corzo is similar to this case in that it involved a warrantless search of the gas cap compartment of a vehicle almost immediately after the vehicle was validly stopped. 2001-1278 at p. 5, 811 So.2d at 76. In Corzo, the police were conducting surveillance of an apartment while awaiting the issuance of a search warrant. They observed two subjects drive up to the apartment and enter. Shortly thereafter, the defendant exited the apartment, reached into the driver’s | flcompartment, and released the gas cap compartment. He walked back to the compartment, removed something from his pocket, and placed it inside the compartment. He then returned to the apartment. A few minutes later, the two men left the scene in the vehicle, and the police followed, stopping the car after it ran a stop light. The officers immediately searched the gas cap compartment and recovered a rock of crack cocaine.
Although another panel of this court in Corzo held that the officers lacked probable cause to search the gas cap compartment, the Louisiana Supreme Court re *1132 versed and reinstated the defendant’s conviction, reasoning:
From the testimony at the motion to suppress hearing, the officers had probable cause to search the gas cap compartment after watching the defendant, the target of the narcotics investigation, leave an apartment known for drug activity and place an object in the gas cap compartment. Furthermore, exigent circumstances arising from the detection of the vehicle on the open road excused the lack of a warrant. Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996). See also State v. Tatum, 466 So.2d 29, 31 (La.1985).
Corzo, 2002-0766 at p. 1, 831 So.2d at 905.
In this case, the facts present an even stronger showing of probable cause than in Corzo. The officers observed Mr. Morgan engage in an apparent hand-to-hand drug deal in which the narcotics were removed from the gas cap compartment. The police thus had probable cause to search the gas cap compartment, and the automobile exception excused the lack of a warrant. Pennsylvania v. Labron, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). Following Corzo, we find Mr. Morgan’s argument regarding the denial of his motion to suppress lacks merit.

\,ASSIGNMENT OF ERROR NO. 2

Mr. Morgan’s second assignment of error is that the trial court erred in allowing Officers Jackson and Jacques to offer opinion testimony without being qualified as experts. Mr. Morgan further contends that that the officers were called to testified as “supposed experts” for a common purpose — to convince the jury that he was not only a heroin dealer, but also a very successful one. Mr. Morgan still further contends that the trial court erred in denying his motion for mistrial following Sgt. Glasser’s testimony. Defense counsel urged the motion following the testimony of the sergeant, arguing that his testimony at the conclusion of the state’s direct examination constituted giving an opinion on an ultimate issue of guilt, the intent to distribute, in violation of the holdings in State v. Wheeler, 416 So.2d 78 (La.1982); State v. Montana, 421 So.2d 895 (La.1982); State v. White, 450 So.2d 648 (La.1984).[5]
Louisiana Code of Evidence Article 704 provides the rules for opinion testimony on an ultimate issue of fact:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
Although Mr. Morgan argues that several of the officers gave improper expert testimony, the real focus of this assignment of error is the testimony of Sgt. Glasser, who was accepted as an expert in the packaging of narcotics, specifically heroin. The testimony by Sgt. Glasser at issue was as follows:
*1133 InQ. Now. I’ve shown you the money, the scale, the Inositol. These items in and of themselves aren’t illegal, are they?
A. No they are not.
Q. But in a larger context of your experience in heroin and narcotics enforcement what do they suggest to you?
A. If someone were to have this type of currency, this amount of currency in this denomination in this fashion concealed on the premises where there was a bottle of Inositol, where there was a digital scale, and where they had been found in possession of retail positions (sic) of heroin I would conclude that that was a distribution effort.
Immediately following the testimony defense counsel requested a side bar, which was not transcribed. At the conclusion of the officer’s testimony, defense counsel requested a mistrial, arguing that Sgt. Glas-ser was allowed to testify as to the issue of the ultimate fact. The trial court indicated that he would have to examine the expert’s testimony and that if Sgt. Glasser testified that it “would”, as opposed to “could,” indicate this person as guilty, then this would be reversible error. Subsequently, defense counsel renewed the motion for mistrial. Before closing arguments, the trial court, at the request of defense counsel, admonished the jury as follows:
The Court: Ladies and Gentleman, the defense has requested that I give you an admonition, which is basically a charge to correct something that may be determinative when you go in there to reach a verdict.
The role of experts in criminal cases is to provide, as I mentioned to you, jurors with a basis of knowledge and background and information on a particular subject.
Your role is that of the ultimate fact finder. I will tell you that you are the ultimate deciders of what facts have been proven and what facts have not been proven. You may not allow the testimony of any expert witness, including Sergeant Glasser to be determinative on the | tissue of intent to distribute. So you and you alone are to decide that issue, what constitutes the issue of intent to distribute, whether or not the defendant had the intent to distribute narcotics.
So anything that may have been said during the course of the testimony by an expert witness including but not limited to Sergeant Glasser regarding the issue of intent to distribute you are to disregard. You alone are going to make that decision, whether or not those requisite elements have been met. Mr. Boshea, is that acceptable to you?
Mr. Boshea [Defense Counsel]: That’s fine, keeping in mind my other previous discussions in the area.
Addressing a strikingly similar issue, the Louisiana Supreme Court in State v. Ducre, 2001-2778 (La.9/13/02), 827 So.2d 1120, recently reinstated the defendant’s conviction, finding the trial court did not abuse its discretion in opting to admonish the jury rather than grant a mistrial when a police officer indicated in his testimony that the cocaine the defendant possessed was a “distribution amount.” In so doing, the Court distinguished the trio of cases Mr. Morgan cites, reasoning:
Athough the court of appeal rested its decision on jurisprudence in this Court precluding expert testimony tantamount to an opinion that the defendant is guilty of the crime charged, State v. White, 450 So.2d 648, 650-51 (La.1984); State v. Montana, 421 So.2d 895, 900 (La.1982); State v. Wheeler, 416 So.2d 78, 81 (La.1982), in those cases the trial court overruled defense objections to the contested expert testimony, and thus the respec *1134 tive juries were allowed to consider what should have been inadmissible evidence. White, 450 So.2d at 649, Wheeler, 416 So.2d at 79, Montana, 421 So.2d at 900. In the present case, the trial court sustained the defense objection and admonished the jury that it, not the expert witness, remained the ultimate finder of fact.
2001-2778, p. 2, 827 So.2d at 1120-21. Continuing, the Court found that “[gjiven the pre-arranged drug deal, the amount of cocaine, and the manner in which it was packaged, the defendant cannot show that the expert witness’s testimony prejudiced [ 13him,” and ruled that the trial court did not abuse its discretion in denying the motion for mistrial. Ducre, 2001-2778, 827 So.2d at 1121.
This case tracks Ducre on several levels. First, in Ducre, as in this case, the trial court admonished the jury that it, not the expert witness, remained the ultimate finder of fact. Second, besides recovering the enumerated items often associated with heroin distribution and the large sum of money from Mr. Morgan’s residence, the officers also observed him engaged in a hand-to-hand drug deal, dispensing heroin from the gas cap compartment in exchange for cash. The latter drug deal provided an independent basis to consider that the heroin was possessed with the intent to distribute. Mr. Morgan’s reliance on the line of cases distinguished in Ducre is thus misplaced.
Turning to the issue of the opinion testimony offered by the two officers, Article 701 of the Code of Evidence permits a police officer to express an opinion regarding matters of personal knowledge gained through experience, even if the witness is not first qualified as an expert. State v. Lowery, 609 So.2d 1125, 1128 (La.App. 2d Cir.1992). The trial court overruled defendant’s objections on this basis. The record reflects that Officer Jackson had been with the police department for six years and had spent two of those years working in the NOPD’s Major Narcotics Unit and that Officer Jacques had been with the Major Narcotics Unit for four years. Accordingly, the record reflects a sufficient basis for the trial court to allow the officers to express an opinion as to the significance of some of. the evidence. We find this assignment unpersuasive.

ASSIGNMENT OF ERROR NO. 3

Mr. Morgan’s third and final assignment of error is that he was denied the right to testify and to a fair assessment of his motion to reconsider sentence | Ubecause of a misinterpretation of his prior arrest record. Particularly, he claims that his rap sheet reflects one or two improper convictions and that this error led him to not testify. Stated otherwise, he claims that had he known he had only one or two prior felony convictions as opposed to two or three, he might have chosen to testify in his own defense. He argues that his right to testify was therefore wrongfully burdened and that his conviction must be reversed. In support, he cites State v. Thompson, 2002-0361 (La.App. 4 Cir. 7/17/02), 825 So.2d 552, and State v. Hampton, 2000-0522 (La.3/22/02), 818 So.2d 720.
The state counters that Thompson is distinguishable from this case in two significant respects. First, in Thompson, the defense had previously attacked the predicate conviction and that was conviction had been vacated; here, none of Mr. Morgan’s three predicate convictions have been challenged much less vacated. The state thus urges that Mr. Morgan is improperly attempting to wage a collateral attack on his prior convictions. Second, in Thompson, the defendant was able to establish that he would have testified but for the erroneous prior conviction by showing that he testi *1135 fied in his prior jury trial, and his attorney testified in Ms post-conviction hearing that he advised the defendant not to testify due to his prior convictions. No such evidence exists in this case. To the contrary, the state stresses that the record from Mr. Morgan’s only other ease that was tried to a jury reflects that he did not testify in that case either. The state still further contends that even assuming Mr. Morgan could successfully collaterally attack his prior convictions, the jury would have heard if he testified that he had three separate convictions, one of which involved distribution.
Mr. Morgan’s argument concerning his criminal record is based on State v. Anders, 2001-0556 (La.6/21/02), 820 So.2d 513, which held that a conviction for | ^distribution of marijuana could not serve as a proper predicate for the crime of possession of marijuana second offense under 40:966(D)(2). Based on Anders, he argues that one of his prior convictions was miselassified as a felony rather than a misdemeanor and that this misclassification was a determming factor in his decision not to testify in this case.[6] He contends that had his previous convictions accurately reflected the crimes that he properly committed he might have testified in his own defense. Essentially, he argues that his conviction should be reversed on the basis that in a retrial he might choose to testify.
We agree with the state that this case is in no way similar to Thompson, supra. Indeed, we find Mr. Morgan’s claim falls within the category of claims the Louisiana Supreme Court cautioned against in Hampton, supra, in expressly pronouncing that its decision was intended to be narrow in scope to avoid a flood-gate of claims in virtually every case where the defendant did not testify. We thus find this assignment unpersuasive.

DECREE

For foregoing reasons, we affirm the conviction, but amend the sentence to delete the prohibition against parole.
CONVICTION AFFIRMED; SENTENCE AMENDED AND SENTENCE AFFIRMED AS AMENDED.
BYRNES, J., dissents in part with reasons.

. The officers searched the informant before initiating the buy and then provided the informant with money for the buy. The officers positioned themselves outside the residence and watched as Mr. Morgan greeted the informant at the front door. After engaging in a short conversation, the informant handed Mr. Morgan the money, and Mr. Morgan reentered the residence. Shortly thereafter, Mr. Morgan exited and handed the informant a package of heroin. The informant then returned to the vehicle in which the officers were stationed and turned over the heroin to the officers.

. It was stipulated that on August 4, 2000, Mr. Sims was sentenced in Orleans Parish Criminal District Court for possession with intent to distribute cocaine to serve forty months in jail.

. Her attorney, Gary Wainwright, was also called as a defense witness. He stated that she told him she worked two jobs and had received money from the settlement of a discrimination lawsuit.

. The latest published decision in which this court has applied its long-standing practice of finding patent error in denying parole eligibility is State v. Randle, 98-1670, p. 6 (La.App. 4 Cir. 12/22/99), 750 So.2d 353, 357. In two recent cases, however, other panels of this court have departed from this long-standing practice. State v. Flowers, 2000-0513, p. 3 (La.App. 4 Cir. 3/7/01), 782 So.2d 685, 688, writ denied, 2001-1175 (La.3/15/02), 811 So.2d 896; State v. Washington, 99-1111, pp. 4-5 (La.App. 4 Cir. 3/21/01), 788 So.2d 477, 485, writ denied, 2001-1096 (La.5/31/02), 816 So.2d 866. In those two cases, the panels construed Richardson v. Louisiana Dep’t of *1131 Public Safety and Corrections, 627 So.2d 635 (La.1993) to mean that the denial of parole eligibility in this context is not error because under La. R.S. 15:574.4(B) a defendant sentenced to life imprisonment is ineligible for parole until his life sentence is commuted to a fixed number of years and until that occurs paróle eligibility cannot be considered. To resolve this conflict in this circuit, we submitted this issue for an en banc vote, and this court voted en banc to follow its long-standing practice. Several judges voiced their opinion that Richardson, supra, is distinguishable, and Chief Judge Byrnes dissented.

. The trio of cases Mr. Morgan, cites — Wheeler, Montana, and White — all involved defendants who were convicted of possession with intent to distribute drugs. In each case, an officer, who was qualified as an expert in narcotic transactions, was presented with a hypothetical that was identical to the facts of the particular case. In each case, the officer replied that, based upon those hypothetical facts, the defendant would have possessed the narcotic with the intent to distribute. In each case, the Louisiana Supreme Court reversed the defendant's conviction, finding that the officer’s opinion that the defendant possessed the intent to distribute was improperly admitted because that opinion usurped the jury’s role as the ultimate fact-finder.

. The record reflects that in 1985 Morgan was convicted in case no. 306-449 "A” of possession with the intent to distribute marijuana. Thereafter, in 1986 in case no. 314-573 Morgan was convicted with possession of marijuana second offense, a felony. The predicate for the enhanced conviction was the 1985 conviction for possession with intent to distribute. In 1995, defendant was convicted in case 374-234 “A” of possession of marijuana third offense on the basis of the two aforementioned convictions. Mr. Morgan contends that he was "negligently” convicted of possession of marijuana second offense in case 314-573 and should properly have been convicted of the misdemeanor, simple possession of marijuana. Likewise, he contends that his conviction in case 374-234 should have only been for possession of marijuana second offense, not third offense.