SUSAN M. CHEHARDY, Judge.
 

 |2On appeal, defendant challenges his conviction and sentence. For the following reasons, we affirm his conviction and sentence.
 

 Procedural Histoi-y
 

 On November 5, 2007, the Jefferson Parish District Attorney charged defendant, Kendall Johnson, with possession with intent to distribute cocaine, a violation of La. R.S. 40:967 A. After a one day trial on October 14, 2009, a twelve-person jury unanimously returned a verdict of guilty as charged.
 

 
 *115
 
 On October 23, 2009, the trial court sentenced defendant to 20 years at hard labor, imposing the first two years without benefit of parole, probation, or suspension of sentence. The State immediately filed a habitual offender bill of information. On January 29, 2010, defendant stipulated that he was a fourth felony offender as alleged in the habitual offender bill of information. The trial court vacated the sentence on defendant’s underlying conviction and imposed an enhanced sentence of 40 years without benefit of probation or suspension of sentence. Defendant timely moved for appeal.
 

 IsFacts
 

 At trial, Detective Chris Morris testified, that, at that point, he had worked for the Jefferson Parish Sheriffs Office (“JPSO”) for six years, with four of those years in the narcotics division. Detective Morris further stated that, on October 8, 2007, he received information from a registered confidential information that a heavy-set African-American man, wearing a light-colored shirt and a black hat, was selling crack cocaine at the corner of Pasadena Avenue and Airline Drive in Jefferson Parish. The confidential informant, who had witnessed such transactions, did not give Detective Morris the subject’s name. Detective Morris knew that neighborhood was a high crime area where numerous narcotics and prostitution arrests had been made.
 

 Based on that information, Detective Morris, who was in plain clothes and an unmarked car, initiated surveillance of the corner. Detective Morris spotted a man, who fit the description given by the informant, standing on the corner of Pasadena and Airline Drive.
 

 As Detective Morris looked on, a man approached the subject under surveillance, stopped very close to the subject for less than 30 seconds, then walked away. Detective Morris testified that, after the first man left the area, a second man approached defendant. Again, the man approached the subject under surveillance, stopped very close to the subject very briefly, then walked away.
 

 After the second unknown male left the scene, a third man, who was riding a bicycle, approached the subject under surveillance. As the third man neared, the subject turned and moved toward a dark area of a parking lot. At that point, Detective Morris activated his police lights and entered the parking lot where the surveillance subject and the cyclist were extant. Officer Kurt Zeigler and |4Lieutenant Danny Jewell, who were in position nearby, moved in to assist Detective Morris.
 

 Immediately, the cyclist, who had not yet made contact with the subject, attempted to ride away, but Detective Morris stopped him. Because the cyclist had not reached the subject and was not in possession of any contraband, Detective Morris allowed him to leave the scene.
 

 Thereafter, Detective Morris informed the surveillance subject that he was investigating reports of illegal activity. He advised the subject of his rights under
 
 Miranda v.
 
 Arizona,
 
 [1]
 
 and the subject, who is defendant herein, indicated he understood those rights.
 

 Detective Morris testified that, at that point, defendant appeared very agitated. Defendant was sweating profusely and clenching his thighs together, which led the officer to believe that the subject might be carrying a weapon.
 

 When Detective Morris asked defendant if he had “anything on him,” defendant replied that he did not. Defendant invited
 
 *116
 
 Morris to pat him down and check his pockets. While Detective Morris was performing a pat-down search of defendant’s clothing, he noticed a large bulge in defendant’s pants below the belt buckle. Detective Morris- testified that, when he asked defendant what the bulge was, defendant admitted that it was crack cocaine.
 

 Detective Morris immediately unbuttoned defendant’s pants and unzipped the zipper a bit. He discovered two clear plastic, sandwich-type bags, which contained individually-wrapped, off-white rocks.
 
 [2]
 
 One sandwich bag held ten individual rocks, and the other held seven rocks. Defendant was also in possession of $31.00 in cash.
 

 | .^Subsequent testing revealed that the gross weight of the first bag was 1.64 grams and the gross weight of the second bag was one gram. Further, when eight rocks were randomly selected from the two bags and tested, each sample tested positive for cocaine.
 
 [3]
 

 Immediately after arresting defendant, Detective Morris learned that defendant lived at 565 Central Avenue, which was not far from the crime scene. After Detective Morris observed the complicated manner in which the contraband was packaged, he believed that the defendant had to package the rocks in a secure environment, not on the street.
 

 As a result of his observation, Detective Morris questioned the defendant, who admitted that he had crack cocaine at his apartment. The police officers then took defendant back to his apartment, where both defendant and his live-in girlfriend gave their written consent to the police to search the residence. Thereafter, defendant led the officers to a bedroom, where they found an expensive pair of men’s shorts with $300.00 in cash in one pocket and a large plastic-wrapped, off-white rock in the other. Subsequent testing revealed that the large rock weighed 4.53 grams and tested positive for cocaine.
 

 At trial, Lieutenant Daniel Jewell was accepted as an expert in the area of the value, sale, packaging, and distribution of street-level, controlled dangerous substances. Jewell testified that he has been employed with the JPSO for eight years, seven and one-half of which he has spent in the narcotics division. Prior to that, he had other police experience, including four years with the New Orleans Police Department where he regularly made narcotics arrests.
 

 Lieutenant Jewell testified that the rocks seized from defendant at the scene appeared to weigh about .1 gram each, and would, to his knowledge, sell for about |fi$10.00 on the street. He noted that each rock was wrapped individually in plastic. In Lieutenant Jewell’s opinion, the manner of packaging indicated an intent to sell the rocks individually, rather than to consume them personally. Further, the large rock seized from defendant’s apartment, which would be worth approximately $500.00 on the street, is also an amount indicative of resale.
 

 Lieutenant Jewell stated that, based on his experience with crack abusers, the average addict does not carry a substantial amount of crack with him at one time. While a user might buy crack in bulk to save money, the typical user can only afford to buy one or two rocks of crack at a time. Even heavy users will buy a small
 
 *117
 
 quantity for immediate use, then find more money, then buy more drugs.
 

 After hearing the testimony and reviewing the evidence, the jury found the defendant guilty as charged of possession with intent to distribute cocaine. On appeal, defendant challenges his underlying conviction and sentence.
 

 In his first assignment of error, defendant argues that the trial court erred by failing to suppress evidence gathered as the result of an illegal seizure. Defendant maintains that the trial court erred in denying his motion to suppress the seized cocaine because the officers seized it pursuant to an illegal stop. Specifically, defendant complains that Detective Morris did not have reasonable suspicion to perform an investigatory stop because Detective Morris did not see defendant engage in any behavior that could be interpreted as criminal. Defendant further argues that, by seizing the cocaine from his pants, Detective Morris went beyond the proper scope of a “weapons frisk.” The State responds that Detective Morris had reasonable suspicion to initiate an investigatory stop because he had corroborated the information from a proven confidential informant, had observed activity by the subject analogous to hand-to-hand drug transactions, and the events occurred in a “high crime” area known for illegal drugs and prostitution.
 

 17The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.
 
 State v. Harris,
 
 00-1930 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, 801-02.
 

 At a suppression hearing, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside, unless there is an abuse of discretion.
 
 State v. Hunt,
 
 09-1589 (La.12/01/09), 25 So.3d 746, 752. In reviewing the trial court’s ruling on a motion to suppress, the appellate court may consider the evidence at the motion hearing and at trial.
 
 State v. Imbraguglio,
 
 08-64 (La.App. 5 Cir. 5/27/08), 987 So.2d 257, 264.
 

 In
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that an investigatory stop is an exception to the warrant requirement. Under La.C.Cr.P. art. 215.1(A), a law enforcement officer may stop and question a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a criminal offense.
 
 State v. Sam,
 
 08-220 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769.
 

 An investigatory stop requires reasonable suspicion of criminal activity.
 
 State v. Boss,
 
 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference.
 
 State v. Chauvin,
 
 06-362 (La.App. 5 Cir. 10/31/06), 945 So.2d 752, 757-58. | ^Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible.
 
 State v. Boss, supra.
 

 The determination of reasonable grounds for an investigatory stop does not rest upon the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known
 
 *118
 
 to the officer at the time of his challenged action.
 
 State v. Kalie,
 
 96-2650 (La.9/19/97), 699 So.2d 879, 880 (per curiam). In considering whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience.
 
 State v. Sam, supra.
 

 A reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. An officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop.
 
 State v. Sam,
 
 08-220 at 6, 988 So.2d at 769-70.
 

 Tips provided to police by confidential informants can supply sufficient reasonable suspicion to conduct an investigatory stop under certain circumstances. An informant’s past record for accuracy and reliability is a factor taken into account when determining the reliability of the tip in question.
 
 State v. Austin,
 
 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879,
 
 writ denied,
 
 05-0830 (La.11/28/05), 916 So.2d 143.
 

 The tip must accurately predict the offender’s conduct in sufficient detail to support a finding that the informant had reliable information regarding the illegal activity.
 
 State v. Holmes,
 
 08-719 (La.App. 5 Cir. 3/10/09), 10 So.3d 274, 279,
 
 writ denied,
 
 09-0816 (La.1/8/10), 24 So.3d 857. The tip must also be corroborated |flby the police.
 
 Alabama v. White,
 
 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If an informant’s tip accurately predicts the offender’s future behavior, it gains an additional modicum of reliability.
 
 Id.
 
 Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. See, e.g.,
 
 State v. Francois,
 
 04-1147 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010.
 

 Here, Detective Christopher Morris, the arresting officer, testified at the suppression hearing. He stated that he received information from a confidential informant who had proven reliable in the past. Detective Morris had made at least four prior arrests based on tips he received from this. Further, this confidential informant is officially registered with the JPSO.
 

 Detective Morris stated that, although his informant did not give him a name, the informant reported that he had personally seen a heavy-set African-American man, wearing a light-colored shirt and a black hat, selling crack cocaine at the corner of Pasadena Avenue and Airline Drive. When Detective Morris conducted surveillance at the specified location, he corroborated the information.
 

 When he began surveillance there on the night of October 8, 2007, Detective Morris saw defendant, a large black man, on the corner. Over the next ten to 15 minutes, Morris saw three men approach defendant individually. Morris could not see any hand-to-hand transactions between defendant and the other men because of the way the men were standing and their close proximity to each other, but his police experience told him the men’s behavior was consistent with narcotics activity.
 

 Detective Morris testified that, when the third subject approached on a bicycle, it became clear to him that defendant was engaged in narcotics activity. [ ^Detective Morris further testified that the corner of Pasadena Avenue and Airline Drive was an
 
 *119
 
 area associated with narcotics activity and prostitution. He and other JPSO officers had made numerous arrests in that neighborhood.
 

 At the suppression hearing, the trial judge found that Detective Morris had the reasonable suspicion necessary to make a valid investigatory stop. After reviewing the record, we agree.
 

 First, Detective Morris had a tip from a known informant whose assistance had proven reliable in the past. The information was relatively specific as to the subject’s personal appearance, location, and activities.
 

 Next, the events occurred in a high-crime area. Further, the subject became agitated and began sweating profusely when Detective Morris approached. While an individual’s mere presence in a high-crime area, standing alone, is insufficient to justify an investigatory stop, his presence in a high-crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop.
 
 State v. Burns,
 
 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076.
 

 Additionally, before initiating the stop, the officer corroborated the Cl’s information through surveillance. While corroborating the information, the officer saw defendant engaged in suspicious activity that he believed to be two narcotics transactions and an attempt at a third transaction.
 

 Although defendant points out that Detective Morris only saw him huddled together with the two subjects that approached him and did not see hand-to-hand drug transactions, the law allows an officer to make reasonable deductions based on his knowledge and experience, and in this ease, the officer’s inferences and deductions were based on his many years of experience in narcotics investigation.
 

 Inin
 
 State v. Fearheiley,
 
 08-0307 (La.4/18/08), 979 So.2d 487 (per curiam), the Louisiana Supreme Court found that a police officer’s observation of an apparent brief hand-to-hand transaction inside a vehicle gave rise to reasonable suspicion for an investigatory stop because the officer was not “required to turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations ... had taught him, that in the narcotics trade ‘when it’s done outside, it’s done very fast and from one hand to the next.’ ”
 
 [4]
 

 Next, Detective Morris noted that, when the officers approached, defendant appeared nervous, was sweating profusely, and clenching his thighs together. Based on this behavior, Detective Morris believed that defendant may have been concealing a weapon and decided to perform a weapons pat-down.
 

 Once an officer stops a person pursuant to La.C.Cr.P. art. 215.1 B, the officer may conduct a limited pat-down frisk for weapons, if he reasonably believes he is in danger or that the suspect is armed.
 
 State v. Taylor,
 
 06-558 (La.App. 5 Cir. 7/30/07), 966 So.2d 631, 639-40,
 
 writ denied,
 
 07-1902 (La.2/1/08), 976 So.2d 717. Detective Morris stated that he felt that the weapons pat-down was necessary for
 
 *120
 
 both his and the defendant’s safety based on the defendant’s nervous behavior and the fact that they were in a high crime area. The trial court found his explanation to be reasonable and we agree.
 

 Detective Morris testified that, when asked, defendant denied having “anything” on his person and invited the officer to search his pockets as confirmation. During the ensuing pat-down, Detective Morris felt a bulge in the defendant’s pants below his belt buckle. Detective Morris testified that when he |12asked defendant about the bulge, defendant responded, “[Y]ou know what that is.” When Detective Morris denied knowledge of the bulge, defendant said, “[I]t’s crack cocaine.” At that point, Detective Morris immediately retrieved two bags of crack cocaine from the concealed compartment in defendant’s pants.
 

 Defendant argues Detective Morris acted beyond the scope of La.C.Cr.P. art. 215.1 when he seized the crack cocaine from the zippered compartment in his pants. However, Detective Morris testified at both the hearing and at trial that defendant consented to a search.
 

 One of the specifically established exceptions to the warrant requirement is a search conducted pursuant to consent.
 
 Schneckloth v. Bustamonte,
 
 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Oral consent is sufficient.
 
 State v. Ossey,
 
 446 So.2d 280, 287 n. 6 (La.1984),
 
 cert. denied,
 
 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984).
 

 The Louisiana Supreme Court (quoting
 
 Florida v. Jimeno,
 
 500 U.S. 248, 250-51, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991)) has commented, “‘[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.’ ”
 
 State v. Huynh,
 
 08-1628 (La.11/10/08), 993 So.2d 1198 (per curiam).
 

 In
 
 State v. Cooper,
 
 43,809 (La.App. 2 Cir. 1/14/09), 2 So.3d 1172, police stopped the defendant on suspicion of armed robbery. On seeing a bulge in the defendant’s pants, an officer asked the defendant for permission to reach into his pocket and remove the bulging object. The defendant gave his permission, and the officer reached into the defendant’s pocket and retrieved $40.00 in cash and a plastic glove.
 
 Id.,
 Id., 2
 
 So.3d at 1176. The Second Circuit held the search fell under the consent exception to the warrant requirement.
 
 Id.,
 
 2 So.3d at 1179.
 

 113In this case, we find that the investigatory stop, search, and subsequent seizure of cocaine were valid, and, as such, the evidence should not have been suppressed. Based on the foregoing, we find no error in the trial court’s ruling on defendant’s motion to suppress. This assignment of error lacks merit.
 

 In his second assignment of error, defendant argues that the trial court erred by accepting Lieutenant Jewell as an expert, thus allowing him to give an opinion as to the ultimate issue, particularly when he was judging his own participation in this case and that of agents under his supervision. Defendant specifically argues that the trial court erred in failing to hold a Daubert
 
 [5]
 
 hearing with respect to Lieutenant Jewell before opening statements, since the State referred to Jewell as an expert witness in its opening statement. Defendant further complains that the trial court committed legal error when it eventually accepted Lieutenant Jewell as an
 
 *121
 
 expert witness, since the court based its ruling solely upon the officer’s experience in narcotics work, and not upon a scientific method.
 

 The State responds that defendant does not show he was prejudiced by the trial court’s failure to hold a
 
 Daubert
 
 hearing prior to trial, since the court ultimately held a hearing out of the jury’s presence before Lieutenant Jewell testified. The State further argues that Louisiana courts have ruled that a police officer does not require scientific credentials in order to testify about the distinctions between street-level narcotics dealers and drug users.
 

 In
 
 Daubert,
 
 the United States Supreme Court held that Federal Rule of Evidence 702 imposes an obligation upon a trial judge to ensure that scientific testimony is relevant and reliable. The
 
 Daubert
 
 court listed several factors that a court could consider in determining the admissibility of an expert’s testimony. This entails a preliminary assessment of whether the reasoning or methodology | Uunderlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.
 
 Daubert,
 
 509 U.S. at 592-593, 113 S.Ct. at 2796. Some factors bearing on this analysis are whether: 1) a theory or technique can be or has been tested; 2) it has been subjected to peer review or has been published; 3) there is a high known or potential rate of error; 4) there are standards controlling the technique’s operation; and 5) the theory enjoys general acceptance in the relevant scientific community.
 
 Id.
 

 [6]
 

 In
 
 Kumho Tire Company, Ltd. v. Carmichael,
 
 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court found that a trial court may apply the
 
 Daubert
 
 factors when determining the admissibility of all expert testimony, not just scientific testimony. At the same time, the Court recognized a trial court’s broad discretion in determining whether the specific factors in
 
 Daubert
 
 are reasonable measures of reliability in a particular case. The trial court’s decision to admit or exclude expert testimony is subject to the “abuse of discretion” standard.
 
 Kumho,
 
 526 U.S. 137, 119 S.Ct. at 1176, 143 L.Ed.2d 238;
 
 State v. Craig,
 
 95-2499 (La.5/20/97), 699 So.2d 865, 870,
 
 cert. denied,
 
 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997).
 

 To establish defendant’s guilt in the instant case, the State was required to prove beyond a reasonable doubt that defendant knowingly and intentionally possessed the crack cocaine -with the specific intent to distribute it. La. R.S. 40:967(A). One method by which the State commonly seeks to prove intent to distribute is by producing expert testimony or other evidence to show that the amount of the drug found in the defendant’s possession is inconsistent with | , ¡¡personal use. See,
 
 State v. Hearold,
 
 603 So.2d 731, 735 (La.1992);
 
 State v. Esteen,
 
 02-1241 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 175,
 
 writ denied,
 
 03-1486 (La.1/9/04), 862 So.2d 978. In order to demonstrate intent in the instant case, the State offered Lieutenant Jewell as an expert in the packaging and distribution of narcotics, specifically crack cocaine.
 

 
 *122
 
 Prior to opening statements, and out of the jury’s presence, defense counsel moved the trial court to hold a
 
 Daubert
 
 hearing with respect to Lieutenant Jewell. The judge ruled that counsel would be allowed to question Jewell about his qualifications during his trial testimony, and there was no need for a separate hearing. The judge further noted that she was not certain
 
 Daubert
 
 applied in this instance.
 

 On appeal, the defendant alleges error yet fails to demonstrate how he was prejudiced by failing to hold the hearing before opening arguments. The importance of the hearing is to allow the trial judge to verify that scientific testimony is relevant and reliable before the jury hears said testimony. Thus, when the hearing is held is of no moment, as long as it is before the testimony is presented. As such, we cannot say that the trial court erred in refusing to hold a
 
 Daubert
 
 hearing before opening statements.
 

 Furthermore, the trial court did hold the necessary hearing before Lieutenant Jewell gave his trial testimony. At the
 
 Dau-bert
 
 hearing, Lieutenant Jewell testified that, at the time of trial, he had worked with the Narcotics Division of JPSO for seven and one-half years. Prior to that, he worked with the New Orleans Police Department for four years, doing undercover narcotics work. Altogether, he had more then eleven years of experience as a police officer investigating illegal narcotics.
 

 | ^Furthermore, since becoming a police officer, Lieutenant Jewell had received over 240 hours of specialized narcotics training. At the time of trial, his most recent training program was in 2007. He also testified that he was a narcotics instructor with the JPSO, teaching trainees how to use narcotics field testing kits. He was a certified site safety officer for meth lab intervention.
 

 Lieutenant Jewell stated, however, that most training in narcotics investigation takes place on the job. Lieutenant Jewell testified that he had interviewed hundreds of people suspected of or arrested for narcotics activity. During those interviews, he had discussed their methods of selling narcotics. He also had working relationships with informants, whom he asks about current trends on the streets.
 

 When defense counsel asked him whether he used a specific methodology in forming his expert opinions, Jewell responded, “It’s solely based on experience and training.” He explained that there are many ways to make a narcotics case. He surmised that his opinions followed a standard generally accepted by law enforcement agencies in the New Orleans metropolitan area and in most of the state of Louisiana.
 

 Lieutenant Jewell testified that he has never been published, but that he feels his opinions and expertise are reviewed by his peers whenever he confers with other officers and attorneys on a narcotics case. He has not developed a formal step-by-step process to evaluate evidence and arrive at conclusions. He generally looks at the amount of narcotics involved in the case, how it is apportioned or packaged, and the value of the packaged drugs. He also considers other recovered evidence such as firearms, scales, money, and packaging materials.
 

 Lieutenant Jewell also testified regarding his formal education. He earned a bachelor’s degree from the University of New Orleans in general studies with a | i7course of study in pre-law and sociology. He earned a masters degree in criminal justice from Loyola University, and he trained at the New Orleans and Charleston police academies.
 

 Further, Lieutenant Jewell had been qualified as an expert witness 13 times in the 24th Judicial District Court. He has
 
 *123
 
 never been denied qualification as an expert in the field of narcotics packaging and distribution. After hearing the testimony and the attorneys’ arguments, the trial court accepted Lieutenant Jewell as an expert in the value, sale, packaging and distribution of street-level, controlled dangerous substances.
 

 Here, defendant fails to show that Lieutenant Jewell’s qualifications were so lacking that the trial court abused its broad discretion in accepting him as an expert. The officer’s expertise was derived from extensive experience and training of the sort this Court has found to be sufficient in similar cases. See,
 
 State v. Addison,
 
 05-378, pp. 19-21 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 896-97,
 
 writ denied,
 
 06-1087 (La.11/9/06), 941 So.2d 36;
 
 State v. Esteen,
 
 02-1241 at 11, 846 So.2d at 175-76.
 

 This Court has held that a police officer does not need scientific credentials and a scientific methodology in order to testify as an expert regarding the distinctions between narcotics dealers and street level users.
 
 State v. Mosley,
 
 08-1318, p. 14 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 714,
 
 writ denied,
 
 09-1316 (La.3/5/10), 28 So.3d 1002. Scholarly writing and peer review are not things commonly associated with police work.
 
 Esteen,
 
 02-1241 at 11, 846 So.2d at 175. Based on the foregoing, we find no error in the trial court’s ruling on Lieutenant Jewell’s status as an expert in this case. This assignment of error lacks merit.
 

 Finally, in his third assignment of error, defendant argues that the trial judge thrice erred in failing to grant a mistrial: first, when Lieutenant Jewell presented | ^hearsay evidence, second, when Lieutenant Jewell was allowed to testify as to the ultimate issue, and third, when the prosecutor impermissibly referred to Mr. Johnson’s choice to remain silent and not present any witnesses.
 

 In his first claim, defendant complains that Lieutenant Jewell gave hearsay testimony regarding information he obtained from the Cl. Defendant complains that Lieutenant Jewell “told the jury that a confidential informant gave them the information to go to the corner on Airline [DJrive.” Defendant, however, does not provide a record citation for such testimony. Furthermore, the trial transcript does not reflect testimony from Lieutenant Jewell regarding the Cl’s statement.
 

 Upon review, we did find that Detective Morris testified at trial that the information he received from the Cl caused him to go to Pasadena Street and Airline Drive. However, as the State notes, defendant neither contemporaneously objected to that testimony, nor moved for a mistrial. In failing to make a timely objection at trial, defendant waived the issue for appellate review. See La.C.Cr.P. art. 841;
 
 State v. Draughn,
 
 05-1825 (La.1/17/07), 950 So.2d 583, 620-21,
 
 cert. denied,
 
 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). Accordingly, we will not address this issue.
 

 In his second claim of this assignment of error, defendant argues that the trial court erred in allowing Lieutenant Jewell to testify to the ultimate issue of guilt or innocence. Defendant argues that Lieutenant Jewell testified improperly as an expert regarding the ultimate issue of guilt, in violation of La. C.E. art. 704. The State responds that defendant is not entitled to review on that issue, since he failed to make a contemporaneous objection to the testimony. The State further argues that, in any case, defendant is not entitled to relief, since Lieutenant Jewell did not testify to the ultimate issue of guilt.
 

 | ^Contrary to the State’s response, our review reveals that defendant contemporaneously objected during Lt. Jewell’s testi
 
 *124
 
 mony. As such, we will address the merits of defendant’s argument.
 

 La. C.E. art. 704 provides that “... in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.” This prohibition applies even if the opinion is solicited through the presentation of a hypothetical situation.
 
 State v. Deal,
 
 00-0434 (La.11/28/01), 802 So.2d 1254, 1261,
 
 cert. denied,
 
 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002).
 

 When a witness makes an irrelevant remark that might prejudice the defendant, La.C.Cr.P. art. 771 gives the trial court the option to either admonish the jury or, if an admonition does not appear to be sufficient, to declare a mistrial.
 
 State v. Ducre,
 
 01-2778 (La.9/13/02), 827 So.2d 1120 (per curiam). Mistrial is a drastic remedy, which should be used only upon a clear showing of prejudice by the defendant; a mere possibility of prejudice is not sufficient.
 
 Id.
 
 A trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial.
 
 Id.
 

 During Lieutenant Jewell’s trial testimony, the prosecutor stated, “Let me give you a hypothetical. I want you to assume that in response to information from an informant — ” Defense counsel objected and moved for a mistrial. The trial court denied the mistrial motion. The prosecutor continued:
 

 Hypothetically I am going to ask you to assume that a surveillance was set up at an area and that during that surveillance a person was seen standing on a corner area in a high drug, high crime area. That during that surveillance that person was seen standing there where in a very brief period of time two different people approached that person in such a fashion that there was no distance between them, not such that a hand could be extended, and that they basically came into contact side to side or face to face which lasted a matter of seconds for the first one. Very briefly thereafter that happened the second time. Then it began to happen a third time when it was — the potential contact was interrupted by police officers. At that time those — that many rocks wrapped that way, that is ^seventeen rocks in two different bags, each being individually wrapped, was found in a concealed compartment in the person’s pants and the person had thirty-one dollars of cash on them. That subsequent to that a larger rock of four and a half grams was found in that person’s pants at his home which was within a couple of miles. What facts — would all of those facts or any of those facts be relevant in helping to determine whether the person had an intent to distribute the cocaine as opposed to simply possess the cocaine?
 

 Defense counsel again objected, arguing that the prosecutor had simply recited the facts of the instant case and asked Lieutenant Jewell to comment on them. The prosecutor responded that he had simply set forth a number of facts in order to ask the officer about their relevance. The court denied the defense objection.
 

 The prosecutor then asked Lieutenant Jewell:
 

 Are any or all of those things in the hypothec[sic] relevant in helping to determine whether the person described was simply possessing cocaine for his own use or had an intent to distribute? And I might add in the hypothec[sic] that neither on that person himself nor at his home was there any smoking device or other device that would be used by someone to use those — that amount of cocaine?
 

 The officer responded:
 

 
 *125
 
 Yes, sir. I think all of those factors are something I would look at and ponder, whether or not to pursue a possession with the intent to sell, or possession. And all those things being present in your hypothetical case, I would believe and I would — if that person existed, I would arrest him for possession with intent to distribute cocaine.
 

 The trial court in our case did not admonish the jurors at the time of the objected-to testimony. But, at the conclusion of trial, the trial court did instruct the jury that:
 

 “Although you are the sole judges of the law and the facts on the question of guilt or innocence, you have the duty to accept and apply the law as given by the court. You must decide the facts from the testimony and other evidence and apply the law to those facts in reaching your verdict.”
 

 Further, the trial court also instructed the jury on the law with respect to expert witnesses.
 

 12i In this case, the prosecutor’s “hypothetical” tracked the specific facts of this case that were adduced at trial, down to the number of pieces of crack recovered from defendant and the weight of the large piece of crack recovered from defendant’s apartment. Accordingly, we find that, in this situation, the witness came too close to commenting on the ultimate issue of guilt, which is the sole province of the trier of fact.
 

 As such, we must determine whether the trial court committed error in denying defendant’s motion for mistrial. In
 
 State v. Ducre,
 
 00-2746 (La.App. 1 Cir. 9/28/01), 809 So.2d 1038, the defendant in that case was convicted of possession of cocaine with intent to distribute. At trial, Captain Timothy Lentz was qualified as an expert witness in the packaging, sale and pricing of cocaine. He was questioned about whether the amount of cocaine found on the defendant was consistent with “ ‘possession or possession with an amount for distribution.’ ”
 
 Id.,
 
 809 So.2d at 1038. Captain Lentz responded, ‘“This is distribution amount here.’ ”
 
 Id.
 
 After the trial judge, pursuant to a defense motion, admonished the jury about the statement, defense counsel moved for a mistrial, which was denied.
 
 Id.
 

 On appeal, our brethren on the First Circuit held that Captain Lentz’s testimony was an impermissible comment on the defendant’s guilt, which violated La. C.E. art. 704. Noting that the Louisiana Supreme Court has held that such an error is subject to harmless error analysis,
 
 [7]
 
 the First Circuit found that, “the prejudice from such a statement by a qualified expert police officer cannot be cured by an admonition to the jury. Once said, it cannot be called back.”
 
 Id.,
 
 809 |22So.2d at 1039. Finding that the guilty verdict was attributable to that error, the court reversed the defendant’s conviction, vacated his sentence, and remanded for a new trial.
 
 Id.
 

 The Louisiana Supreme Court, however, reversed the First Circuit and reinstated Ducre’s conviction. The court reasoned:
 

 In the present case, the district court did not abuse its discretion in admonishing the jury rather than granting a mistrial when a police officer indicated that
 
 *126
 
 the cocaine in defendant’s possession was a “distribution amount.” Although the court of appeal rested its decision on jurisprudence in this Court precluding expert testimony tantamount to an opinion that the defendant is guilty of the crime charged, in those cases the trial courts overruled defense objections to the contested expert testimony, and thus the respective juries were allowed to consider what should have been inadmissible evidence. In the present case, the trial court sustained the defense objection and admonished the jury that it, not the expert witness, remained the ultimate finder of fact.
 

 Moreover, in the instant case, it cannot be said that the expert’s comments were so prejudicial as to warrant a mistrial. In the present case a police officer, who had received the defendant’s pager number from a reliable confidential informant, arranged a drug sale with either the defendant or a co-defendant. When the defendant appeared at the agreed-to location at the scheduled time of the sale, police arrested him, and found approximately $1,500 worth of cocaine in three separate bags. Given the pre-arranged drug deal, the amount of cocaine, and the manner in which it was packaged, the defendant cannot show that the expert witness’s testimony prejudiced him. In these circumstances, the district court did not abuse its discretion in refusing to grant a mistrial. (Citations omitted).
 

 Ducre,
 
 01-2278 at 2, 827 So.2d at 1120-21.
 

 In
 
 State v. Morgan,
 
 02-1489 (La.App. 4 Cir. 3/12/03), 842 So.2d 1126,
 
 writ denied,
 
 03-1062 (La.10/17/03), 855 So.2d 759, the defendant was convicted of possession of heroin with intent to distribute. At trial, a Sergeant Glasser was qualified as an expert in the packaging of narcotics, specifically heroin. Glasser testified that the defendant’s possession of a digital scale, Inositol, and heroin in packets was suggestive of a distribution effort.
 
 Id,
 
 842 So.2d at 1129, 1133.
 

 lavAt the conclusion of Glasser’s testimony, the defense moved for a mistrial, arguing the officer had testified to the issue of ultimate fact. The trial judge stated he would have to examine the expert’s testimony to make a determination. Subsequently, the defendant renewed his mistrial motion. Before closing arguments, the trial court, at the defendant’s request, admonished the jury as follows:
 

 Ladies and Gentleman, the defense has requested that I give you an admonition, which is basically a charge to correct something that may be determinative when you go in there to reach a verdict.
 

 The role of experts in criminal cases is to provide, as I mentioned to you, jurors with a basis of knowledge and background and information on a particular subject.
 

 Your role is that of the ultimate fact finder. I will tell you that you are the ultimate deciders of what facts have been proven and what facts have not been proven. You may not allow the testimony of any expert witness, including Sergeant Glasser to be determinative on the issue of intent to distribute. So you and you alone are to decide that issue, what constitutes the issue of intent to distribute, whether or not the defendant had the intent to distribute narcotics.
 

 So anything that may have been said during the course of the testimony by an expert witness including but not limited to Sergeant Glasser regarding the issue of intent to distribute you are to disregard. You alone are going to make that decision, whether or not those requisite elements have been met.
 

 
 *127
 

 Id.,
 
 842 So.2d at 1133. The Fourth Circuit found this admonition to be sufficient.
 
 Id.,
 
 842 So.2d at 1133-34.
 

 Our review of the jurisprudence reveals that, in this case, the trial judge’s instructions to the jury before deliberations were sufficient to counteract any influence caused by Lieutenant Jewell’s testimony. Here, as in
 
 Morgan,
 
 the trial judge instructed the jury immediately before deliberations that it was responsible for determining whether the State had proven the elements of the crime. Further, as in
 
 Ducre,
 
 the trial court reminded the jurors that they were the ultimate finders of fact.
 

 | ^Moreover, we cannot say that Lieutenant Jewell’s comments were so prejudicial as to warrant a mistrial. Here, the testimony revealed that a reliable confidential informant reported that a man, matching defendant’s description, on a specific street corner was selling crack cocaine. The officer initiated surveillance to corroborate the tip and observed the defendant engaging in suspicious-looking activities.
 

 Once the defendant was arrested, the police found two separate bags of crack cocaine -with seventeen individually-wrapped rocks, totaling 2.74 grams of crack cocaine. Furthermore, subsequent to a search of defendant’s residence, the police found another rock of crack cocaine weighing 4.53 grams. Given the corroborated tip, the amount of cocaine found on defendant and at his home, and the manner in which it was packaged, there was substantial evidence of defendant’s guilt presented at trial. Further, in the face of this overwhelming evidence, it is unclear how the expert witness’ testimony prejudiced him. We find that, in these circumstances, the district court did not abuse its discretion in refusing to grant a mistrial.
 

 In his final claim in his third assignment of error, defendant maintains that the trial court erred in denying him a mistrial when the prosecutor commented on his right against self-incrimination. Defendant argues that the trial court erred in failing to grant a mistrial when the State, in its rebuttal closing argument, commented on his failure to call any witnesses or to testify at trial. The State responds that the prosecutor’s comment was not intended to call attention to defendant’s failure to testify at trial, but was a response to defense counsel’s statement in closing argument that the prosecution had failed to present evidence that defendant sold narcotics to the three people he met with on the street corner.
 

 12sLouisiana Code of Criminal Procedure Article 770, in pertinent part, provides:
 

 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
 

 (3) The failure of the defendant to testify in his own defense.
 

 The article was designed to protect a defendant against a comment by a judge, district attorney, or court official on the defendant’s failure to take the stand at his trial.
 
 State v. Smith,
 
 336 So.2d 867, 868 (La.1976). The right protected by Article 770’s remedy of automatic mistrial is the right to refrain from giving sworn testimony at trial.
 
 Id.
 
 The purpose behind Article 770(3)’s prohibition against such prosecutorial comment is to protect the defendant’s Fifth Amendment right against self-incrimination by preventing attention from being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf.
 
 State v. Mitchell,
 
 00-1399 (La.2/21/01), 779 So.2d 698, 701-02.
 

 
 *128
 
 In this case, defendant refers to the following excerpt from the prosecutor’s rebuttal closing argument:
 

 The defendant was on a street corner some two miles from his house in a high crime, high drug area on Monday, October the 8th at 10 something at night. And if you believe what defense counsel is arguing, he was greeting friends; not selling cocaine.
 

 Now, you cannot — the defendant doesn’t have to do anything and you can’t hold it against him if he doesn’t do anything and doesn’t call any witnesses.
 

 Defense counsel objected and moved for a mistrial. He argued the prosecutor was implying that defendant bore the burden of proof at trial. At the side-bar conference, the prosecutor responded, “What I told the jury is they don’t have to do anything, and they don’t — and it can’t be held against them. But we can’t call those witnesses because we don’t know who they are. There’s nothing Unobjectionable about that.” The judge overruled defendant’s objection and denied the mistrial motion.
 

 Although defendant is correct in noting that the State generally cannot comment upon his failure to testify, in the proper context, the State’s mention of a defendant’s constitutional privilege against self-incrimination is not considered an impermissible comment on the defendant’s failure to testify at trial. For instance, the Louisiana Supreme Court has held that during voir dire, the State may mention the defendant’s constitutional privilege against self-incrimination.
 
 State v. Shea,
 
 421 So.2d 200, 206 (La.1982),
 
 rev’d, on other grounds,
 
 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).
 
 [8]
 
 See also,
 
 State v. Packnett,
 
 04-709 (La.App. 5 Cir. 12/28/04), 892 So.2d 615, 622-24,
 
 writ denied,
 
 05-0599 (La.6/3/05), 903 So.2d 455.
 

 In this case, we cannot say that the prosecutor was commenting on defendant’s failure to testify, but rather it appears that the prosecutor was responding to defense counsel’s closing argument. Based on the foregoing, we find that this assignment of error lacks merit, also.
 

 Finally, pursuant to La.C.Cr.P. art. 920, we have reviewed this record for errors patent.
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no patent errors that require corrective action. Accordingly, defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . Each rock was wrapped in a small piece of plastic wrap. Each package was tightly closed with a small knot.
 

 [3]
 

 . Charles Krone, a criminalist for the Jefferson Parish Crime Lab, conducted the testing. His results were included in a report that was introduced at trial.
 

 [4]
 

 .
 
 See also, State v. Flagg,
 
 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527,
 
 writ denied,
 
 00-1510 (La.3/9/01), 786 So.2d 117, in which this Court found an experienced officer’s observation of an apparent hand-to-hand transaction, at night, in a high crime area with ongoing complaints of illegal activity, coupled with the defendant’s startled expression at the sight of police officers, gave rise to reasonable suspicion of criminal activity to support an investigatory stop.
 

 [5]
 

 .
 
 Daubert v. Merrell Dow Pharmaceuticals,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
 

 [6]
 

 . In
 
 State v. Foret,
 
 628 So.2d 1116 (La.1993), the Louisiana Supreme Court recognized that courts may rely on the standard enunciated in
 
 Daubert
 
 when evaluating the admissibility of scientific expert testimony in accordance with La. C.E. art. 702, which provides:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 

 [7]
 

 . See
 
 State v.Code,
 
 627 So.2d 1373, 1384 (La.1993), ce
 
 rt. denied,
 
 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). The proper analysis for determining harmless error is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.”
 
 Sullivan v. Illinois,
 
 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
 

 [8]
 

 . In
 
 Shea,
 
 the prosecutor stated that the defendant did not have to "do anything in his defense” but that he had the right to take the stand.
 
 Id.
 
 The supreme court held that the trial judge did not err in refusing to grant a mistrial because the remark was not a comment on the defendant’s failure to take the stand. The
 
 Shea
 
 court concluded that the prosecutor simply mentioned the defendant's constitutional right not to testify, and directed a legitimate inquiry into the weight a juror would accord his testimony if he did take the stand.
 
 Id.