STATE OF LOUISIANA

VERSUS

FELTON THOMPSON

NO. 22-K-497

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-534, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

January 18, 2023

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED**
   **SJW**
   **HJL**
   **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
   Thomas J. Butler

COUNSEL FOR DEFENDANT/RELATOR,
FELTON THOMPSON
   Richard J. Bourke
   Russell D. Barksdale

**WINDHORST, J.**

Defendant, Felton Thompson, seeks supervisory review of the trial court's denial of his motion to suppress the identification and granting of the State's motion to exclude the expert from testimony at the suppression hearing. For the following reasons, we affirm the trial court's rulings.

**FACTS and PROCEDURAL HISTORY**

On October 7, 2016, an unknown black male forced his way into the victim's apartment at gunpoint, physically assaulted her, and covered her face before sexually assaulting her. The victim described her assailant as a black male, 5'10" to 6' tall, age 35 to 40, and 160 to 170 pounds. The victim stated that the assailant had a lazy eye. On October 13, 2016, the victim provided an audiotaped statement to police in which she described her assailant as "cross-eyed in one eye on the right side."

On October 19, 2016, the victim viewed a six-man lineup, not including defendant, and did not identify anyone as her assailant. On December 22, 2016, the victim assisted the police in completing a sketch of her assailant, and a wanted flyer was prepared with the sketch. On September 28, 2017, the victim viewed a second six-man lineup, which included five-filler photographs and a photograph of defendant. The victim picked defendant out of the lineup, after which defendant was arrested.

On January 28, 2019, the District Attorney charged defendant with the aggravated burglary and sexual battery. On March 8, 2019, defendant filed omnibus motions, including a motion to suppress the identification. After a hearing on November 14, 2019, the trial court denied the motion to suppress the identification.

On June 6, 2022, defendant re-urged his motion to suppress the eyewitness identification, asserting that the nature of the identification process was suggestive. Defendant argued that the identification process was suggestive because the photograph of defendant was the only photograph depicting a man with a right eye

crossed to the inside. The State objected to reopening the trial court's consideration of the motion to suppress the identification, but the trial court allowed it to be reopened. On August 29, 2022, the State filed a motion in limine to exclude defendant's offered expert testimony on memory and eyewitness identifications.

After a hearing on August 30, 2022, the trial court denied the motion to suppress the identification and granted the State's motion to exclude the expert from testifying at the hearing on the motion to suppress the identification.

In his writ application, defendant argues that the trial court erred by denying the motion to suppress the identification and granting the State's motion to exclude the expert from testifying at the suppression hearing. Defendant raises five assignments of error, including: (1) the district court erred in applying the incorrect legal standard when determining whether the "6-pack" was suggestive; (2) the district court abused its discretion in holding that the "6-pack" lineup was not suggestive; (3) the district court erred in failing to have regard to relevant considerations in determining whether there was a risk of misidentification; (4) the district court abused its discretion in finding that there was not a risk of misidentification; and (5) the district court erred when it refused to allow the defense to present relevant evidence, thereby denying the defendant a fair opportunity to be heard.

## LAW and ANALYSIS

### *The Motion to Suppress*

Defendant argues that the trial court erred in denying the motion to suppress because it applied the incorrect standard to both prongs of the suppression test, namely, the suggestiveness of the identification procedure and the likelihood of misidentification. He further argues that the trial court failed to consider evidence of the risk of misidentification as required by the Manson[1] factors and that it did not properly weigh the corrupting effect of the suggestive identification procedure.

22-K-497                                    2

In order to suppress an identification, a defendant has the burden of first proving that the identification procedure was suggestive. State v. Higgins, 03-1980 (La. 4/1/05), 898 So.2d 1219, 1232, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). A photographic lineup is suggestive if the photographs display the defendant in such a manner that the witness' attention is unduly focused on the defendant or if the individuals in the lineup lack a sufficient resemblance of characteristics and features. State v. Grimes, 09-2 (La. App. 5 Cir. 5/26/09), 16 So.3d 418, 429, writ denied, 09-1517 (La. 3/12/10), 28 So.3d 1023. A strict identity of physical characteristics among the persons depicted in the photographic array is not required; all that is required is a sufficient resemblance to reasonably test the identification. Id. Courts make this determination by examining articulable features of the persons' pictures such as height, weight, build, hair color, facial hair, skin color and complexion, and the shape and size of the nose, eyes, and lips. State v. Bradley, 11-1060 (La. App. 5 Cir. 9/25/12), 99 So.3d 1099, 1105-1106, writ denied, 12-2441 (La. 5/3/13), 113 So.3d 208.

Even if an identification process is suggestive, the defendant must also show there was a substantial likelihood of misidentification based on the identification procedure. Id. at 1106. Courts examine various factors to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification including: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. State v. Honore, 09-313 (La. App. 5 Cir. 1/12/10), 31 So.3d 485, 497.

A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Id.

22-K-497                                          3

In denying the motion to suppress identification in the present case, the trial court found that it was not suggestive because the six individuals were all the same size, looked similar to one another, and all had a lazy eye. The trial court also found that the significant similarities between the composite sketch prepared with the victim's input and defendant's photograph supported finding the chance of misidentification was slight.

In State v. Brown, the defendant claimed that the photographic lineup shown to the victim was impermissibly suggestive because he was the only subject in the lineup missing an eye. State v. Brown, 03-897 (La. 4/12/05), 907 So.2d 1, cert. denied, 547 U.S. 1022, 126 S.Ct. 1569, 164 L.Ed.2d 305 (2006). In that case, the victim gave the police a detailed description of his attacker immediately following his ordeal. Id. at 17. The police subsequently showed the victim a six-person photographic lineup containing the defendant's picture, and the victim selected the defendant's photo from the lineup very quickly. Id. The victim testified that he had good eyesight and that he obtained a good look at the defendant during the attack. Id.

In Brown, the Louisiana Supreme Court found that the photographic lineup was fair because the State provided fill-in subjects with similar hair, skin tone, facial hair, and some distinguishing eye feature that would be reasonably comparable to that of the defendant's missing eye. Id. Specifically, the upreme court noted that the photographic lineup included one subject whose left eye was clouded white, one who appeared to be blind, one who appeared to have a lazy eye, two subjects who appeared to be droopy-eyed as though under the influence of drugs or alcohol, and only one subject with no apparent ocular difficulties.

Although, in Brown, the Supreme Court found the lineup fair, it proceeded to consider whether there was a substantial likelihood of misidentification if the lineup was considered suggestive. Based on the totality of the circumstances, the Supreme Court found that no substantial likelihood of misidentification was present. The

victim gave a detailed description of his attacker that included distinguishing features in addition to the defendant's missing eye, and that the victim was unwavering in his positive identification. Thus, the Supreme Court found that the trial court did not err in denying the defense motion to suppress identification. Id. at 17-18.

Taking into consideration the pertinent factors and the specifics facts of this case, we do not find the lineup at issue suggestive. Based on the victim's detailed description of her attacker shortly after her ordeal, including that he had a lazy eye, the photographic lineup was set up by entering the different features of defendant to match his height, weight, and other characteristics. Similar to Brown, *supra*, the photographic lineup shows that the fill-in subjects had some sort of distinguishing eye feature, such has a lazy or crossed eye. In addition, the other suspects in the line-up had similar hair, skin tone, and facial features. We therefore cannot find that the trial court abused its discretion in ruling that photographic lineup was fair and not unduly suggestive. To require that the Jefferson Parish Sheriff's Office find multiple suspects with features similar to defendant and a crossed right eye would be unreasonable. See, State v. Roussell, 12-1792 (La. App. 1 Cir. 7/25/13), writ denied, 13-2047 (La. 3/14/14), 134 So.3d 1193, and writ denied, 13-2070 (La. 3/14/14), 134 So.3d 1193 ("To require that the photographic display include other persons who look similar to the defendant and have a "teardrop tattoo" is unreasonable.")

Furthermore, even if the photographic lineup constituted a suggestive procedure with only one person having a right crossed eye, based on a totality of the circumstances, the facts do not show that there was a substantial likelihood of misidentification. The victim had a clear opportunity to view defendant as he approached her, when he followed her up the stairs, and when he attacked her. The police report shows that the victim provided a detailed description of her perpetrator to the police. The victim was also able to provide the police enough information for

them to create a composite sketch of the perpetrator, which the trial judge found very similar to defendant. In addition, although approximately one year passed between the crime and the confrontation, the victim was very certain that defendant was the perpetrator.

For the above reasons, we find that the trial court did not abuse its discretion by denying the motion to suppress the identification in the photographic lineup.

### *Motion to Exclude Expert Testimony*

Defendant also argues that the trial court erred when it excluded the expert testimony of Dr. Nancy Franklin regarding memory and eyewitness identification. The trial judge excluded Dr. Franklin's testimony, reasoning that Dr. Franklin could not offer him anything that would be in any way meaningfully helpful.

La. C.E. art. 702 provides the law regarding testimony by experts as follows:

> A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.
>
> B. This Article shall also govern expert witnesses on the issue of memory and eyewitness identification. In a criminal case, if a party seeks to offer the testimony of a memory and eyewitness identification expert under this Article, such expert testimony may be considered for admission only if all provisions of Paragraph A of this Article are satisfied. A memory and eyewitness identification expert's testimony may not be admitted under this Article if there is physical or scientific evidence that corroborates the eyewitness identification of the defendant. An expert's testimony admitted under this Paragraph shall not offer an opinion as to whether a witness's memory or eyewitness identification is accurate.

The trial court's decision to admit or exclude expert testimony is subject to the "abuse of discretion" standard. <u>State v. Johnson</u>, 10-209 (La. App. 5 Cir.

10/12/10), 52 So.3d 110, 121, <u>writ denied</u>, 10-2546 (La. 4/1/11), 60 So.3d 1248.

Although La. C.E. art. 702 was amended relative to the consideration of expert testimony on memory and eyewitness identification, the Louisiana Supreme Court has held that it:

> has long been reluctant to allow experts to offer opinions on the credibility of another witness for fear of the expert invading what is considered the exclusive province of the jury. Moreover, the concept of promoting battles of experts over whether the testimony of every witness is truthful and reliable is not desirable. These considerations are especially compelling in cases involving eyewitness identifications where any alleged deficiencies could easily be highlighted through effective cross-examination and artfully crafted jury instructions.

<u>State v. Young</u>, 09-1177 (La. 4/5/10), 35 So.3d 1042, 1050.

In this case, the trial court granted the State's motion to exclude the expert's testimony at the suppression hearing, concluding that Dr. Franklin could not offer it any information of which he was not already aware or which would be meaningfully helpful. Upon review, we cannot find the trial court abused its discretion in granting the motion to exclude the expert's testimony. The trial court made it clear that the expert's testimony would not be helpful to the court in ruling on the motion to suppress. Further, the trial court indicated that if Dr. Franklin had been present at the hearing, it would have conducted a <u>Daubert</u> hearing regarding her ability to testify before the jury. Thus, it appears that consideration of whether to allow Dr. Franklin to testify at trial before the jury is still open for consideration.

Accordingly, for the reasons stated, trial court's rulings denying defendant's motion to suppress identification and granting the State's motion to exclude the expert from testimony are affirmed.

## **AFFIRMED**

---

[1] <u>Manson v. Brathwaite</u>, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JANUARY 18, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-K-497**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
THOMAS J. BUTLER (RESPONDENT)       RICHARD J. BOURKE (RELATOR)       RUSSELL D. BARKSDALE (RELATOR)

**MAILED**
NO ATTORNEYS WERE MAILED